WILLIAMS
*vs.*
BARTON.

WILLIAMS *vs.* BARTON.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, FOR THE PARISH OF EAST BATON ROUGE, THE JUDGE OF THE EIGHTH PRESIDING.

If the defendant, on the trial, abandons title to the property claimed in the petition, but insists on his claim for damages set up in compensation of the plaintiff's demand, and the latter permits the case to go to the jury in this manner, without objection, the verdict and judgment will not be disturbed on this ground.

Where the defendant gave up the practice of law in New-Orleans, and entered into a contract with the plaintiff, by which he removed to East Baton Rouge, and took upon him the cultivation of an estate and plantation, in conjunction with the plaintiff's son; on a disagreement between the parties, the contract was dissolved, and the plaintiff sued to recover the possession of the estate : *Held*, that the defendant cannot recover damages for the *loss of his practice* in New-Orleans, *as for a breach of the contract.* His absence was not the consequence of a *breach* of the contract by the plaintiff, but of the contract itself.

Damages for a breach of contract are those which are incidental to and caused by the breach, and may reasonably be supposed to have entered into the contemplation of the parties at the time of making the contract.

No action can be sustained on a breach of promise to make a donation.

This is a petitory action, in which the plaintiff seeks to recover an estate, or tract of land, called the *Arlington estate,* in the parish of East Baton Rouge, together with the slaves, cattle and horses, stock and farming utensils, and the growing crop thereon, which were in the possession of the defendant, and which the plaintiff alleges are illegally and unjustly withheld from him. He also alleges, that he has suffered ten thousand dollars in damages, by reason of the illegal detention of said estate ; and he prays judgment, declaring him to be the true owner, and to be put in possession of said property ; that it be sequestered, together with the crop, and that he also have judgment for his damages and all costs.

The defendant pleaded a general denial, except as to such allegations as were expressly admitted, and required strict proof of every allegation not admitted.

He expressly averred that he was in possession in virtue of a mutual understanding between the parties; that one half of the plantation and slaves was bestowed as a donation on him and his wife (the daughter of the plaintiff) : and he further avers, that if he and his wife are not adjudged to be the owners of one half of said plantation, that then, availing himself of the law allowing demands in reconvention, he expressly states, that before his marriage and removal to Baton Rouge, he exercised the profession of an attorney and

counsellor at law in the city of New-Orleans, then having a lucrative and still increasing practice; and that, by the inducements and solicitations of the plaintiff, he was prevailed on to change his residence and remove to the plantation, and, in consequence thereof, he sustained a loss and injury to the amount of ten thousand dollars, which he pleads in compensation against the plaintiff's claim for damages. The defendant sets up further demands for his improvement of the plantation; for the plaintiff's share of the expenses, and other claims for articles, hands and utensils furnished to a considerable amount, which he prayed might be allowed him.

Upon these pleadings and issues, the cause was tried before the court and a jury.

It appeared in evidence, that the defendant was the son-in-law of the plaintiff, and that the latter was desirous of establishing him and his daughter on a plantation. For this purpose, the plaintiff purchased, in the spring of 1833, a sugar and cotton plantation on the Mississippi river, in the parish of East Baton Rouge, known as the Arlington estate; and at the instance, and in compliance with several letters written by the plaintiff, the defendant, with his family, removed from New-Orleans about the middle of May, 1833, and established himself in the cultivation of the Arlington estate, in conjunction with the plaintiff, his son residing on the plantation with the defendant.

It was clearly shown, from the plaintiff's letters to the defendant, that the former was to furnish all the hands and supplies for the plantation, and to pay the expenses of the improvements to be put on it. The expense account, however, showed that the business of the plantation was carried on by the co-partnership name of Barton & Williams. This was confined to the cultivation, and, it would appear, to the profits and revenues arising therefrom; but the plaintiff received the crop of 1833, after paying the expenses. It was also understood, and so the witnesses declare, that one half of the plantation and slaves was considered as belonging to the defendant and his wife, being made as a donation to

them. The witnesses state the declarations of the plaintiff to this effect. It was also shown, that, in February, 1834, the defendant entered into co-partnership with one Wallace, for the cultivation of Arlington plantation that year, of which the plaintiff was apprised, and made no objection.

In the following summer, a disagreement between the plaintiff and defendant took place, and the latter being in possession, and considering himself as part owner, claimed the right to keep the possession. This suit was instituted the beginning of August, 1834, and the plaintiff had the Arlington estate sequestered, and placed in the custody of the law.

The defendant showed, by the depositions of several gentlemen of the bar in New-Orleans, that when he quit the practice of law and went to Arlington, he was in the enjoyment of a good practice, which was increasing, and that it was worth from ten thousand to twelve thousand dollars per annum. He also made proof of other demands on the plaintiff, growing out of the cultivation of the plantation in partnership between them.

The cause was submitted to a jury, who found a verdict for the defendant, and plaintiff in reconvention, in the sum of ten thousand four hundred and forty-four dollars: whereupon the court rendered the following judgment:

" This cause came on for trial, and was submitted to a jury; on the argument, the defendant abandoned all claim as to the title of the property set forth in the petition, and submitted the case on the issue of damages claimed in compensation and reconvention. The jury entered a verdict in favor of the defendant for the sum of ten thousand four hundred and forty-four dollars; and the court being of opinion that the verdict of the jury is supported by the law and the evidence: it is, therefore, ordered, adjudged and decreed, that the defendant, Seth Barton, do recover from the plaintiff, John C. Williams, the sum of ten thousand four hundred and forty-four dollars: It is, therefore, ordered and adjudged, that John C. Williams be decreed to be the lawful owner of the Arlington plantation, and the property seques-

EASTERN DIST. tered thereon; and that the defendant recover his costs to
*April*, 1839.  be taxed."

WILLIAMS       From this judgment the plaintiff appealed; and the de-
*vs.*          fendant, for answer to the petition of appeal, avers there is
BARTON.        no error in the judgment, and prays that the same be con-
firmed.

[This case was argued at great length in written briefs,
and orally by the parties on the mass of evidence introduced
into the record; but as the case was decided on different
principles from those embraced in the arguments, it would
be useless to present them *in extenso*, and impossible to give
them in a condensed form, so as to embrace the points
settled in the case.]

*A. N. Ogden* and *C. M. Conrad*, for the plaintiff and
appellant.

*Elam*, and *Barton in propria personum*, on the part of the
defence.

*Eustis, J.*, delivered the opinion of the court.

The plaintiff instituted this suit against the defendant, for
the recovery of a plantation called Arlington, with the
negroes, cattle and farming utensils thereto belonging. The
defendant, on the trial of the cause, abandoned all preten-
sions to the title and possession of the property, and confined
his claim to a sum of money which he set up in compensa-
tion to certain damages which the plaintiff had alleged he had
sustained, in consequence of the defendant's acts, to the
amount of ten thousand dollars.

The plaintiff offered no evidence in support of damages;
the defendant adduced evidence to establish the different
sums claimed in compensation, and the jury gave the defend-
ant a verdict against the plaintiff for the sum of ten thousand
four hundred and forty-four dollars. Judgment was rendered,
giving the estate and negroes to the plaintiff, and confirming
the verdict. From this judgment the plaintiff has appealed.

Our attention has been called to the manner and time in which the defendant, during the trial, abandoned his claim to the title of the property in dispute. We think that the party ought to have applied to the court for relief, when the act occurred of which they complain, but as they let the matter go to the jury without objection, and without requiring the charge of the judge in relation to it, this court ought not to interfere in their behalf. We have no reason to believe that an application to the court below, would not have protected them against surprise, and if any detriment has resulted to the cause from the withdrawal of part of the defence by the defendant, it would be unjust in this stage of the proceedings, to subject him to the expense and delay of another trial, for an act in which the plaintiff acquiesced, and the effects of which he could have avoided at the time it occurred.

EASTERN DIST.
April, 1839.

WILLIAMS
vs.
BARTON.

If the defendant, on the trial, abandons title to the property claimed in the petition, but insists on his claim for damages set up in compensation of the plaintiff's demand, and the latter permits the case to go to the jury in this manner, without objection, the verdict and judgment will not be disturbed on this ground.

The controversy between the parties grew out of an understanding between them, for the purchase and cultivation of the estate which was the subject of the plaintiff's demand. The defendant was the son-in-law of the plaintiff, and what passed between them in the inception of this undertaking, was modified by the intimate relations of confidence and friendship, and seems to us to have been dependent on their continuance. The plaintiff was desirous of establishing the defendant on the estate, in partnership with his son. The plaintiff was to furnish the means; no advance was to be required from the defendant, who was to remove from the city, and jointly with the plaintiff's son, conduct the affairs of the plantation. This project did not long succeed, and fifteen months after the defendant took possession of the Arlington Place, this suit was instituted, and the property sequestered.

The only contract which we can notice as having existed between the parties, is a contract on the part of the plaintiff for the use and cultivation of the Arlington plantation, by the defendant and his son, in partnership, for which he, the plaintiff, was to furnish the funds. Supposing that this contract ceased by the interruption of the relations of amity between the parties, (and we feel ourselves unable to come

WILLIAMS
vs.
BARTON.

Where the defendant gave up the practice of law in New-Orleans, and entered into a contract with the plaintiff, by which he removed to East Baton Rouge, and took upon him the cultivation of an estate and plantation in conjunction with the plaintiff's son; on a disagreement between the parties, the contract was dissolved, and the plaintiff sued to recover the possession of the estate: *Held*, that the defendant cannot recover damages for the loss of his practice in New-Orleans, as for a breach of the contract, His absence was not the consequence of a breach of the contract by the plaintiff, but of the contract itself.

Damages for a breach of contract are those which are incidental to, and caused by the breach, and may reasonably be supposed to have entered into the contemplation of the parties at the time of making the contract.

to any other conclusion on the subject,) we proceed to examine the claims of the defendant for indemnity.

He claims the sum of ten thousand dollars for the loss of his professional earnings in New-Orleans, during the time he was in Baton Rouge. The defendant was at the bar in this city, and by the contract he was to remove to the Arlington Place. He removed there accordingly, at the instance of the plaintiff, in May, 1833, and so far as relates to this matter, must be considered, as he was in fact, residing there up to the time of the institution of this suit.

His removal from this city, and the loss of his practice at the bar during his absence, was not the consequence of the breach of the contract on the part of the plaintiff, but of the contract itself. By the agreement itself, he was to remove from New-Orleans, and would have equally lost his practice whether the contract was fulfilled or not. The damages which a party can recover on a breach of a contract, are those which are incidental to and caused by the breach ; and may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. *Louisiana Code,* 1928.

*Ordinairement les parties sont censées n'avoir prevu les dommages et intérêts que le créancier, par l'inexécution d'obligation, pourrait souffrir par rapport à la chose même qui en a été l'objet. Damni et interesse, propter ipsam rem non habitam.* Pothier on *Obligations,* section 161. See, also, 6 *Toullier,* section 286 *et seq.,* to the same effect.

We leave out of view all that part of the claim of the defendant founded on a promise on the part of the plaintiff to make a donation of one half the estate to his daughter, the wife of the defendant. No action can be sustained on a breach of a promise to make a donation. Up to the time that the donation is executed, under the forms required by our law, the donor is not bound. Indeed, a promise to make a donation to a child, on the part of a father, necessarily presupposes the continuance of those feelings and relations which prompted the promise.

After an examination of the pleadings and evidence in this

case, having great difficulty in coming to a conclusion in relation to the rights of the parties, we suggested to them the propriety of an amicable settlement of the matters in dispute between them. This suggestion was made from the conviction on our minds, that mutual friends could do more justice between them, than we would be permitted to do, owing to the relations in which they stood to each other, and the modifications with which those relations and the subsequent interruption of them had affected their respective rights. This suggestion was without effect.

EASTERN DIST.
*April*, 1839.

WILLIAMS
*vs.*
BARTON.
No action can be sustained on a breach of promise to make a donation.

Without throwing the responsibility of the breach of the contract on the plaintiff or defendant, and supposing it to have resulted solely from a change of opinion on either side, and a want of harmony, so necessary between parties, in the management of a large estate, we concur with the jury and the court below, in thinking that the defendant is entitled to recover a certain sum from the plaintiff.

Although the partnership between the son of the plaintiff and the defendant, did not continue long, yet we must consider that the latter remained on the estate, under the original agreement.

In the consideration of the defendant's claims, we feel bound to confine ourselves to such charges as the plaintiff is liable for according to the evidence, agreeably to the rules of law, a test which neither anticipated in the commencement of the transactions which are the subject of the present suit, and which we are bound to acknowledge, will not enable us to meet the equity of the case. We allow the defendant the sum of three thousand seven hundred and eighty-five dollars.

The judgment of the court below is, therefore, reversed, so far as relates to the demand in reconvention of the defendant; and judgment is entered in favor of the defendant against the plaintiff, for the sum of three thousand seven hundred and eighty-five dollars, with costs in the court below ; and so far as relates to the Arlington estate, negroes and property sequestered, it is affirmed. The appellee to pay the costs of appeal, and the appellant the costs in the

EASTERN DIST. court below, except those which were incurred by the
*April*, 1839. sequestration, which are to be paid by the defendant.