Houston & T. C. R'y Co. v. George A. Hill.

(Case No. 2024.)

| 63 | 381 |
| 84 | 68 |

1. Venue — Cause of action. — The "cause of action," as those words are used in the statute regarding venue (R. S., art. 1198, subd. 21), consists not only of the right which plaintiff has, but of the injury thereto; thus, when there is a breach of contract which by its terms was to have been performed in any particular county, a cause of action arose there, and the defendant can be sued there.

2. Contract — Principal and agent. — A contract made with a general passenger agent for the transportation of excursionists over the railroad for which he is agent, he having general supervision of the passenger business, and it being a part of that business to make special contracts for excursions on the road, is binding on the railroad company, and the company cannot avoid performance of such contract on account of any instructions to the agent divesting him of authority to make the particular contract, unless notice thereof be brought home to the other contracting party.

3. Same. — A railroad company may bind itself to transport passengers and freight beyond its own line. (Citing S. M. Co. v. Mo. Pac. R'y Co., 70 Mo., 672; Cummins v. Dayton & U. R'y Co., 9 Am. & E. R'y Cases, 36, and other cases.)

4. Contract — Measure of damages. — The appellee made a contract with the passenger agent of a railway company, on the 27th of October, 1883, to transport excursionists from Galveston to Dallas and return for $5 for each passenger on the occasion of public amusements at Dallas. Its performance was to begin November 2, and the passengers were to be returned to Galveston by the 12th of November. No limit to the number of passengers. On the 31st of October, 1883, the company repudiated or disaffirmed the contract, and notified appellee of that fact. In a suit by appellee to recover damages for its breach, *held:*

(1) He was entitled to recover such damages as were incidental to and caused by the breach of contract, and which might be reasonably supposed to have entered into the contemplation of the parties at the time of making the contract.

(2) The party contracting with the company having done so to secure such profit as he might make by the sale of tickets to be furnished at the contract price, an approximate basis for damages would be the profit above the contract price which he could have realized on delivery of tickets negotiated by him and contracted for by others, and which he would have realized but for the repudiation by the company of its contract. To this might be added the difference in expenses incurred by appellee in transporting excursionists whom he had agreed to take on the faith of the contract and the amount he would have expended had the contract of the company been observed. Conjectural profits not based on actual agreements with those desiring to make the excursion, and with no definite knowledge of how many tickets could have been sold under the original contract, or for what profit, can form no legal basis for a recovery.

Appeal from Galveston. Tried below before the Hon. Wm. H. Stewart.

Suit against the Houston & Texas Central Railway Company.

The petition alleged that appellee entered into a contract with appellant by which it agreed to transport from Galveston and other towns along its road, to Dallas, excursionists at $5 per round trip; that this contract was made in Galveston county; that it was violated and broken in Galveston county. The petition also alleged that appellant had a local agent representing it in Galveston county, whose name was R. S. Collin, and who resided there.

The appellee set out in his petition the several items of expense incurred, and after mentioning the number of tickets actually sold, on which appellee would have made a profit, he laid his damages at $10,595.

The appellant answered appellee's petition: 1. By a plea of privilege, and attempting to negative all facts which would give the court jurisdiction over appellant. 2. By general demurrer. 4. General denial, and specially, that C. B. Gray was sent to Galveston for a special purpose, which was to receive and forward foreign emigrants for defendant. 5. That Gray was drunk and unconscious when the contract was made.

The plea of privilege was overruled by the court, because the cause of action arose in Galveston county, to which ruling appellant excepted.

The court sustained special exception four, to which ruling appellee excepted.

Verdict for appellee for the sum of $6,000; and after a motion for a new trial was made and filed, and, on the day when it was called for disp osition, the appellee came into court with a written motion and asked to be permitted to remit the sum of $3,000 of the verdict and judgment, which motion was resisted by appellant, but the same was granted and a *remittitur* entered for the sum of $3,000 of the verdict and judgment, to which ruling the appellant excepted.

*O. T. Holt*, for appellant, that the contract did not bind the company, cited: Parsons on Contr., vol. 1, 6th ed., pp. 40, 41, 43 and 44; Wharton on Agency, pp. 123, 124, 139 and 460.

That the road was liable only for the direct and immediate damage,— citing: Jones v. George, 61 Tex., 354; Sedgwick on Damages, pp. 34, 45, 91 and 125; Sutherland on Damages, pp. 17, 18, 19, 20, 21 and 159; Field on Damages, pp. 44 and 45; Hadley v. Baxendale, 9 Exch., 341; Harvey v. Connecticut R. R. Co., 18 Am. R. R. Cas., p. 1.

That the damages claimed, and on which the verdict was based, were conjectural,— citing: Waco Tap R. R. Co. v. Shirley, 45 Tex., 372; Texas & St. Louis R. R. Co. v. Young, 60 Tex., 204; Jones v.

George, 61 Tex., 354; Calvit v. McFadden, 13 Tex., 327; Galveston, Harrisburg & San Antonio R. R. Co. v. Jesse, Texas L. Rev., November 18, 1884, vol. IV, No. 20; Austin City Water Works v. Capital Ice Co., White & Willson, Civ. Cas., 1134; Taul v. Shanklin, White & Willson, Civ. Cas., 1139; Galveston, Harrisburg & San Antonio R. R. Co. v. Douglass, White & Willson, Civ. Cas., 67, 68; United States v. Behan, 110 U. S., 344; Sedgwick on the Measure of Damages, pp. 33, 34, 70, 72, 73; Sutherland on Damages, pp. 18, 19, 20, 21 and 159; Hadley v. Baxendale, 9 Exch., 341; Wolcott, Johnson & Co. v. Manard, 36 N. J. L., 270; Harvey v. Connecticut R. R. Co., 18 Am. R. R. Cas., 1; Griffin v. Colver, 16 N. Y., 489.

That there was no data on which to base the *remittitur*,— citing: Hardeman v. Morgan, 48 Tex., 103; Hoskins v. Huling, Texas L. Rev., p. 183, September 23, 1884, vol. IV, No. 12; Hughes v. Brooks, 36 Tex., 381; Rodgers v. Bowerman, 21 Fed. R., 284; Lambert v. Craig, 12 Pick., 199; Hodoff v. Sharp, 40 Cal., 69; Smith v. Copes, 5 Minn., 373; Sutherland on Damages, pp. 812, 813, 814.

*James B. Stubbs* and *Ballinger, Mott & Terry*, for appellee, that the profits that could have been made, had the contract been carried out, when its breach was wilful, should be allowed, cited: Mayne on Damages, §§ 13, 14, 16, 56, 57, 59, 82; Sutherland on Damages, vol. 1, 106 *et seq.*, 126, 130; vol. 3, 153 *et seq.;* Sedgwick on Damages, vol. 1, 116 *et seq.*, 130, 134, 218; Frye v. R. R. Co., 67 Me., 414; Gilbert v. Kennedy, 22 Mich., 117; Wiggins Ferry Co. v. R. R. Co., 5 A. & E. R. R. Cases (1 Mo.); Robinson v. Bulloch, 66 Ala., 548; R. R. Co. v. Staub, 7 Lea (Tenn.), 397; Cox v. McLaughlin, 54 Cal., 605; Forrest v. Caldwell, 5 La. Ann., 220; Blair v. Laflin, 127 Mass., 518; Goldman v. Wolff, 6 Mo. App., 490; Masterson v. Mayor, etc., 7 Hill (N. Y.), 61; Alfaro v. Davidson, 40 N. Y. Sup. Ct., 87; Benson v. Atwood, 13 Md., 20; Avan v. Frey, 69 Ind., 91; White v. Miller, 78 N. Y., 393; Erie & P. R. R. Co. v. Douthit, 88 Pa. St., 243; R. R. Co. v. Dale, 76 Pa. St., 47; Cockburn v. Ashland Lumber Co., 54 Wis., 619; Thompson on Carriers of Passengers, p. 568, § 23; Menard v. Stevens, 44 N. Y. Sup. Ct., 515; Mitchell v. Connell, id., 401; Fox v. Harding, 7 Cush., 516.

WILLIE, CHIEF JUSTICE.— The Revised Statutes provide that suits against a private corporation may be commenced in any county in which the cause of action or any part thereof arose. Art. 1198, subd. 21.

This court has held that a cause of action consists as well of the

right of the plaintiff as of the injury to that right. Phillio *v.* Blythe, 12 Tex., 127. The right of the plaintiff in this cause accrued by reason of his contract with the defendant, which was made in Galveston county. The injury arose from a breach of that contract, and as the contract itself was to be in part performed in that county, and was wholly broken, a cause of action arose there, and the suit was properly instituted in Galveston county.

We think the charge of the court clearly and correctly submitted the law of agency as applicable to the contract made by the appellee with Gray, the general passenger agent of the appellant company. If Gray was the general passenger agent of the company, and that particular officer was intrusted with a general supervision of their passenger business, and a part of that business was to make arrangements and special contracts for excursions and like occasions, then a contract of the kind made with such agent would be binding upon the company.

Upon well recognized principles of law no private instructions given by the company to such an agent, and not brought to the knowledge of the party contracting with him, as to a matter within the usual scope of his authority, would affect the right of such party to have the contract carried out and performed. Story on Agency, §§ 73, 106, 133; Sew. M. Co. *v.* Mo. Pac. R'y Co., 70 Mo., 672.

It is the duty of the party contracting with the agent to inform himself as to whether or not the contract proposed to be made is within the usual or ordinary powers of the agent, and then, if he has no reason to suppose that these powers have not been restricted in the particular instance, he may contract as safely with the agent as with the principal himself.

It appears from the evidence that Gray was held out to the world as having a general authority to do all acts in a particular line of railroad business. In such case the railroad company is bound by his acts in executing the authority, though it may have privately limited that authority, or he may have acted in violation of his duty. Story on Ag., § 73.

The doctrine is now firmly established, and has been long acquiesced in and acted upon, that a railroad company may, by contract, bind itself to transport passengers or property beyond its own line. S. M. Co. *v.* M. P. R'y Co., *supra;* Lawson on Cont. of Car., §§ 229, 230; Lindley *v.* R. & D. R. R., 9 Am. & E. R'y Cases, 31; Cummins *v.* Dayton & U. R'y Co., id., 36.

The railroad company having power to bind itself by such contracts, and the general passenger agent being the party through

whom they are usually and ordinarily made, and the contract made by that agent with the appellee being of this character, it must be held binding upon the appellant, and that the latter is liable upon its breach for such damages as are allowed by law for the violation of contracts of this character.

The only remaining question in the case of any importance is as to the damages which the plaintiff below was entitled to recover for a breach of the contract by the company.

There is no allegation in the petition that would bring the case within the rule of damages as laid down in cases of tort, and it must be considered under rules applicable to contract alone.

The contract was to transport passengers from Galveston and other points between Galveston and Dallas to the latter place and return for $5 for each passenger thus transported. It was made with the company's agent on the 27th of October, 1883; its performance was to commence on the 2d of November thereafter, and the passengers were to be returned by the 12th of the same month. No limit seems to have been placed upon the number of passengers to be carried on the excursion. The occasion of the proposed visit to Dallas was a match game or games of base ball, together with horse races and other attractions to take place at the latter place at or about the time the excursionists would arrive. On the 31st of October, 1883, the defendant repudiated and disaffirmed the contract made with Hill by its agent, and notified the former that it would not be respected or carried out.

The damages claimed by the plaintiff were the profits which he would have derived from the contract had it been carried out by the company according to its terms. This is, no doubt, the true measure of damages in the case, as now well settled by the great weight of authority. The principle is that announced in Hadley v. Baxendale, 9 Exch., 341, and adopted by this court in all cases where the question has been brought up for adjudication. Calvit v. McFadden, 13 Tex., 326; Jones v. George, 61 Tex., 345.

It is in effect that these damages are such as are incidental to and caused by the breach, and may reasonably be supposed to have entered into the contemplation of the parties at the time of making the contract. Williams v. Barton, 13 La., 410.

It is useless to announce a proposition so plain as this, that a party making a favorable contract, from the performance of which he would ordinarily and in the usual course of things derive profit, is damaged to the extent of the profits that would thus arise in case of a non-performance of the contract by the party with whom he dealt.

Such profits are naturally incident to the contract, and must have been within the contemplation of the contracting parties.

What, then, were the profits which the plaintiff would have derived from a performance of the contract?

He claims in his petition that he had sold two thousand tickets at $2 net advance on the price he was to pay for them, thereby losing a profit of $4,000; and that he could have sold three thousand more at the same advance, making to him an additional profit of $6,000. These allegations, so far as proven by proper evidence, would doubtless form an appropriate basis for a recovery of such damages as would compensate the appellee for his loss by reason of the broken contract.

How far were the allegations sustained by the evidence?

As to the number of tickets actually sold the testimony is very uncertain. Without going into a detail of the evidence — which is very lengthy — there is no proof whatever that more than about four hundred tickets were sold, putting the most favorable construction for the plaintiff upon the evidence. As to about three-fourths of that number great doubt arises whether the tickets were actually sold, or were merely placed with certain parties to be sold. There was proof that two thousand tickets were printed for use in Galveston and placed with agents for sale; but depositing them for sale and selling them are quite different things.

When we pass to a consideration of the number that might have been sold, we find the evidence wrapped in still greater uncertainty. It is sought to establish the probable amount of these by showing that the occasion drew a great many visitors to Dallas; that some of the trains going there were full of passengers, and that the base ball match and races were much talked about in Galveston, and the opinion of witnesses was given that on account of the low price of the excursion tickets a great many more persons would have gone than at the usual rates. Other evidence of a similar character was given upon the subject. It is too clear for argument that no reliable data are furnished by this kind of evidence upon which any calculation as to the probable amount of tickets that the appellee would have sold can be based. No one upon a careful review of it can say whether it shows more satisfactorily that seven hundred or five thousand, or any intermediate number, could have been sold. It is true that, where such a matter is not susceptible of exact proof, we must resort to what approaches nearest to certainty. But especially in cases of contract must we base our calculations upon facts drawn from experience or observation in cases of a similar nature.

For instance, if a man has been engaged in business for any length of time, he can form some estimate from his past earnings what its profits will be in the future. In such cases, if deprived of the faculty of pursuing the business, at least by the tortious act of another, it has been held that he can estimate his damages with something like certainty. Penn. R'y Co. v. Dale, 72 Pa. St., 47.

If one plants seed and gathers a crop from it, he knows how much his land would probably produce during that season. Hence, if the seed were of a different species of a particular class from what they were represented or warranted to be, he can figure up his loss by deducting the value of the crop raised from the value of a like crop of a desired article. Wollcott v. Mount, 7 Vroom, 262.

There was no proof as to the number of people transported upon any similar excursions. None as to the number of people from Galveston and other points on the route that did visit Dallas upon this occasion. No proof as to how many attended from any given point. There was no evidence as to how many applications for tickets were made, or how many had declared their intention of going to Dallas, or anything of the kind. Our courts have not gone so far as some others in allowing uncertain profits as a measure of damages. We have not allowed the value of lumber that a mill could have sawed (Stark v. Alford, 49 Tex., 260), nor the amount of crop one could have raised where his crop has been destroyed by the breach of contract or even tortious act of another. Jones v. George, 56 Tex., 149; S. C., 61 Tex., 345; Railroad Co. v. Joachimi, 58 Tex., 456; Railroad Co. v. Young, 60 Tex., 201. Yet the amount of lumber that a mill could saw, or of crop that land would produce, might possibly be approximated from the past experience of many years. It would, at any rate, be in a great degree more certain than any calculation as to the number of passengers who would embark upon any given excursion, which must be in a great measure matter of conjecture, as the like seems never to have occurred before.

Taking the evidence as we find it in the record, containing as it does no reliable proof outside the amount of tickets actually sold or bargained for, as to how many could have been sold for the occasion, whether one hundred, five hundred, one thousand or five thousand, or any other number, the limit of damages to which the plaintiff was entitled was the net profits on tickets actually sold or bargained for, less the probable expenses of the excursion. To these might also be added the difference between the amount paid as passage money for persons whom Hill had agreed to transport to

Dallas and back, and did actually transport, and what it would have cost him to have them carried had the contract been fulfilled.

The charge of the court was doubtless intended to be in accordance with this view of the measure of damages. It was not, however, sufficiently restrictive as to the facts in evidence which the jury could take into consideration in arriving at the amount of damages to be recovered.

The jury were by the evidence and charge launched upon a sea of speculation without rudder or compass to guide them, and it is not matter of surprise that they found an amount double that which the plaintiff himself, by the entry of his *remittitur*, in effect admitted he was entitled to recover.

If it could be clearly ascertained from the evidence that, under the foregoing rule as to damages, the plaintiff was entitled to recover the sum to which the verdict was reduced by the *remittitur*, the judgment might possibly stand. But under the most favorable view for the plaintiff, he did not establish his right to one-third of that sum; and we cannot even tell whether the amount recovered was for tickets actually sold or engaged, or was conjectured from what the witnesses said as to the probabilities of a large excursion to Dallas. We think the judgment not warranted by evidence under the law of the case, and it will be reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

[Opinion delivered February 24, 1885.]