THE EQUITABLE MORTGAGE COMPANY V. WEDDINGTON,
SLATON, AND SEARS.

No. 100.

1. **Venue of Suit Against Foreign Corporation for Breach of Contract.**—A foreign corporation, having its principal office in D. county, made a contract with persons residing in C. county to loan money exclusively through them on lands situated in their county. The contract was made in C. county, and provided that the corporation should send an agent there to examine the lands to be offered for loans. Being sued in C. county for a breach of such contract, in making loans on lands there through other persons, the corporation pleaded its privilege to be sued in D. county. *Held,* that the cause of action must be deemed to have arisen, at least in part, in C. county, and that the suit was maintainable there.

2. **Pleading — Plea of Privilege not Waived, When.**—Where pleas are filed in due order, an answer to the merits does not waive a plea of privilege. Following Railway v. Whitley, 77 Texas, 126, and distinguishing York v. The State, 73 Texas, 651.

3. **Damages — Measure of, for Breach of Contract — Unearned Profits.**—Where one party to a contract is prevented by the other from earning profits thereunder, and the amount of such profits that would have been earned can be reasonably ascertained from the evidence, this will furnish the measure of damages; and reasonable compensation, not measured by the terms of the contract, for services of like character to those that might have been performed, is not a correct measure of damage in such case.

APPEAL from Clay.  Tried below before Hon. P. M. STINE.

*Harry P. Lawther,* for appellant.— 1. The defendants' plea of privilege was good. With reference to the clause of the statute, "where the cause of action or a part thereof accrued," unless the defendant in action ex contractu has contracted to perform his part of the contract in some particular county, the cause of action does not accrue in that county. Rev. Stats., art. 1198 (21b); Railway v. Hill, 63 Texas, 381; Phillio v. Blythe, 12 Texas, 127; Wilson v. Adams, 15 Texas, 324; Little v. Woodbridge, 1 W. & W. C. C., sec. 152; Mann v. Clapp, 1 W. & W. C. C., sec. 503; Cohen v. Munson, 59 Texas, 236; Lindheim v. Muschamp, 72 Texas, 33.

2. In an action for breach of contract, where the only injury resulting is the prevention of a gain or profit, and there is no certain proof as to what that gain or profit would have been, only nominal damages can be awarded if a breach be established. 1 Suth. on Dam., 127–130, and chap. 11, secs. 9–16.

*J. A. Templeton,* for appellees.—1. It was clearly shown by the evidence, that if appellees had any cause of action whatever, the same " or a part thereof " arose in Clay County, and that the court, a quo, had juris-

diction to try and determine said cause. Rev. Stats., art. 1198 (21b); Railway v. Hill, 63 Texas, 381.

2. Appellant, by entering its appearance and pleading to the merits in the trial court, submitted to the jurisdiction thereof, and such appearance and pleading was a waiver of its plea to the jurisdiction of said court. Rev. Stats., arts. 1241–1245; Railway v. Traweek, 84 Texas, 65; Pace v. Potter, 85 Texas, 473; York v. The State, 73 Texas, 651; Ins. Co. v. Hanna, 81 Texas, 487.

3. Reasonable compensation for the making of such loans as those to Byers Bros. and Sanborn was the correct measure of damages in this case. Railway v. Hill, 63 Texas, 381; Railway v. Shirley, 45 Texas, 372; Cates v. Sparkman, 73 Texas, 623; Tel. Co. v. Brown, 84 Texas, 57; De Cordova v. Bahn, 74 Texas, 645; Harrell v. Zimpleman, 66 Texas, 292; Kirk v. Emmerling, 22 How., 69; 1 Suth. on Dam., 127–130; 1 Wait's Act. and Def., 270; 1 Am. and Eng. Encycl. of Law, 396; 2 Am. and Eng. Encycl. of Law, 582.

HEAD, Associate Justice.—Sometime in May, 1887, appellant and appellees entered into a contract by which appellees were to procure loans for appellant upon country real estate in Clay County, Texas, upon the terms set forth in a rate sheet furnished them. By the terms of this contract, on all loans from $500 to $1500 at 10 per cent interest, appellees were required to obtain their compensation from the borrower; on loans from $1500 and over at 10 per cent interest, appellant was to pay appellees a commission of 2 per cent, and appellees could also obtain such additional compensation from the borrower as they might be able to do; on loans from $1500 to $3000 at 9 per cent interest, appellant was to receive in addition to such interest a premium of 1 per cent; on loans over $3000 at 9 per cent interest, appellees were to obtain their compensation from the borrower. By the terms of this contract appellant was to make loans upon such land in Clay County through no other person, and appellees were to procure loans upon such lands for no other company. The time for the continuance of this arrangement was not specified. The contract was made in Clay County, Texas.

In the summer of 1889 appellant negotiated a loan with Byers Bros. for $60,000, and with H. B. Sanborn for $44,000, both secured by mortgage upon land in Clay County. These loans were made through an agent other than appellees, and appellees instituted this suit to recover of appellant a commission of 2 per cent thereon as damages for the breach of said contract by it. To this suit appellant pleaded, that it was a foreign corporation, doing business in this State under a permit from the Secretary of State, and that its principal office was in Dallas County, and that it had no agency or representative in Clay County, and claimed its right to be sued in Dallas County. Upon the trial, on this plea the court below

instructed the jury to find against the same, and appellant's first assignment of error calls in question the correctness of this action of the court.

The twenty-first exception to article 1198 of our Revised Statutes, which prescribes the venue of suits, provides, that "suits against any private corporation, association, or joint stock company may be commenced in any county in which the cause of action or a part thereof arose, or in which such corporation, association, or company has an agency or representative, or in which its principal office is situated." To determine where a cause of action arose or accrued within the meaning of statutes of this kind frequently presents questions of considerable difficulty. Appellant contends that this statute has special reference to the place of performance, and that a suit could only be maintained in the county in which the defendant, by the terms of the contract, was to perform its part thereof; but we are of opinion that this construction of the statute is too restricted. By the terms of the contract these loans were to be secured upon lands situated in Clay County. The contract was made in Clay County. Appellees resided in Clay County, and it was contemplated that at least the greater part of their work would be done in that county. They were employed because they lived in that county, and were expected to solicit loans there. Appellant, by the terms of the contract, was to send its agent to Clay County to examine and pass upon the value of the lands upon which the loans were to be secured. Under such a contract, for a breach thereof we believe that the cause of action should be held to have arisen, at least in part, in Clay County within the meaning of our statute. Railway v. Hill, 63 Texas, 381; Phillio v. Blythe, 12 Texas, 124; Durst v. Swift, 11 Texas, 273. The evidence was undisputed as to the terms of the contract and the manner in which it was to be performed, and there was therefore no error in the court instructing the jury to find against appellant's plea of privilege.

Appellees also contend, that appellant waived its plea of privilege to be sued in Dallas County by answering to the merits of the case, and it must be conceded that there is an unguarded expression contained in the opinion in the case of Railway v. Traweek, 84 Texas, 69, which seems to support this view; but we are of opinion that the case of Railway v. Whitley, 77 Texas, 126, is more in point and should be followed. This case holds, that where these pleas are filed in due order, an answer to the merits does not waive a plea of this kind. As we understand the York case, referred to in the opinion in 84 Texas, it only decides the effect to be given to such pleading as an appearance when filed by a nonresident, and does not apply to the case of a foreign corporation having an agent in this State. In such cases the venue is prescribed by the statute above quoted.

In making the loans to Byers Bros. and Sanborn, appellant acted entirely through other parties, and these loans were made at a rate of in-

terest not authorized by the rate sheet furnished to appellees. By the terms of the contract, however, appellant had no right during its continuance to make a loan of this kind at any rate of interest except through appellees, and in such cases, where application was made to it, it should have referred the parties to appellees to enable them to negotiate the loan and obtain such compensation from the borrower as they might be able to secure. There is evidence in the record which tends to show, that in addition to the rate of interest appellant was to receive upon these loans, there was also paid a commission to the agent through whom the same were negotiated.

The court, after charging upon other issues in the case, gave the following charge on the measure of damages, which is complained of by appellant, to-wit:

"If you find under the foregoing instructions, that plaintiffs are entitled to recover damage for the making of the Byers Bros. or the Sanborn loan, or both of them, then you will find for plaintiffs what would have been a reasonable compensation for the making of said loan or loans, had they been permitted to make the same."

As we understand this charge, and as the jury must have understood it, the court below held the law to be, that if appellant violated its contract in making these loans, appellees would be entitled to recover reasonable compensation (not measured by the terms of the contract) for making loans of that kind, even though they performed no service·in making the same. As so understood, we believe the charge to be erroneous. Where one party to a contract is prevented by the other from earning profits thereunder, and the amount of such profit that would have been earned can be reasonably ascertained from the evidence, this will furnish the measure of damages. Railway v. Hill, 63 Texas, 381; Tel. Co. v. Bowen, 84 Texas, 476; Tel. Co. v. Brown, 84 Texas, 54.

In this case, if the jury, under the evidence, should find, that had these loans been referred to appellees, they would have realized the commissions that were paid to the agent who did negotiate them, or if the evidence should reasonably show that they would have been able to have obtained a greater commission than was paid, they should be allowed to recover the amount that was so lost. In other words, we believe that the compensation that appellees would have been enabled to secure from the borrowers, had they been permitted to negotiate these loans, must furnish the measure of their damages for being deprived of the opportunity to earn the same, if this can be reasonably ascertained from the evidence.

In 2 Sedgwick on Damages, section 670, it is said: "The compensation of a servant or agent often depends upon a contingency. In such a case, where a breach of the contract by the employer prevents the happening of the contingency, he will not be allowed, by taking advantage of his own breach of contract, to prevent the plaintiff from recovering

compensation altogether.    If in such a case the amount of compensation can be determined, the plaintiff will be allowed to recover it, though, through the defendant's default, the contingency upon which it was payable has not happened.    Thus, where plaintiff was to receive £20 at Lady-day, if he stayed till then, and the defendant wrongfully discharged him before Lady-day, he was allowed to recover the £20.    Where a broker secures a proper purchaser for his principal, he is entitled to his commission, though the principal refuses to sell, or through defect of title can not convey.    And where the broker was to have all he could get for the land over $200, it was held, that he could recover what a proper purchaser, secured by him, was willing to pay over $200, though the owner refused to sell.    In Fairchild v. Rogers it was held, that the agreed commission could be recovered upon breach by the owner, on proof that the price named would certainly have been obtained, though the broker did not actually secure a customer.

" Where the amount of compensation which would be due under the contract can not be determined, the plaintiff may recover the value of his services.    Thus, where the plaintiff was engaged by the defendant to train, enter in races, and ride the defendant's horse in races for a year, his compensation to be two-thirds of the net profits, and the defendant broke the contract, the defendant claimed that the measure of damages was two-thirds of the value of the use of the horse for a year.    The court, however, allowed the plaintiff to recover the value of his services, on the ground that the defendant had put it entirely out of the plaintiff's power to secure remuneration at the contract rate."

Had appellees actually rendered service in procuring these loans, and appellant had wrongfully placed it out of their power to secure their compensation under the contract, they would be allowed to recover the value of their services to the time of the breach; but not having placed their right of action upon this ground, they must be restricted to the compensation they would have earned had the contract not been broken by appellant, and to entitle them to this compensation they must be able to show the amount with reasonable certainty.    Wholly conjectural commissions can not be recovered.    2 Sedg. on Dam., 671.

For the error in the charge of the court on the measure of damages, we are of opinion that the judgment rendered in the court below should be reversed and the cause remanded for a new trial in accordance with this opinion.

*Reversed and remanded.*

Delivered February 23, 1893.