**NATIONAL BANK OF CLEBURNE et al. v. M. M. PITTMAN ROLLER MILL. (No. 6955.)**

(Court of Civil Appeals of Texas. San Antonio. May 16, 1923. Rehearing Denied June 13, 1923.)

**1. Banks and banking ⊜⇒262—Contracts ⊜⇒62 (1)—Facts held to negative defense of ultra vires and lack of consideration.**

A national bank's customer owed the bank $8,000 and was insolvent; his roller mill was his and his wife's homestead, and the bank's president persuaded him to incorporate the mill, agreeing that, if he would do so and execute his notes to the bank for such indebtedness and turn over the mill stock to the bank to secure the claim, it would loan the mill corporation $14,000 to purchase wheat during the season. *Held*, that the agreement to loan the $14,000 was not ultra vires on the ground that the president was not expressly authorized to make it by the board of directors or by the by-laws or that the board did not ratify it, and that the agreement was not without consideration.

**2. Damages ⊜⇒120(1)—Measure of damages for breach of contract to loan money stated.**

Where bank breached its contract to loan roller mill company $14,000 to buy wheat during the season, or harvesting time, when the experience of both parties was that wheat was lower as farmers hastened to dispose of it, the company could recover its lost profits consisting of the difference in the value of the wheat which it could have bought with the $14,000 at the proved average price of $1 per bushel during the season and the market value of such wheat later, proved to be $1.60 per bushel, or $8,400.

Appeal from District Court, Johnson County; Irwin T. Ward, Judge.

Action by the M. M. Pittman Roller Mill against the National Bank of Cleburne and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Thompson, Barwise, Wharton & Hiner, of Fort Worth, Lockett & Lockett, of Cleburne, and Ellis Douthitt, of Sweetwater, for appellants.

Wm. H. Atwell, of Dallas, for appellee.

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

COBBS, J.   Appellee sued appellants to recover $8,400 damages caused to appellees by reason of the bank's failure to furnish funds in accordance with the contract with which appellee mill would have purchased 14,000 bushels of wheat from which appellee would have made the sum of $8,400, which represented a reasonable profit appellee would have made on the wheat because of its rise in the market value, from the time it would have been purchased to the time it would have been sold in September, 1921.   The bank, a federal corporation, a national bank, becoming insolvent, it and its assets were placed in the hands of A. P. Woolridge, receiver, by the Comptroller of the Currency of the United States, appellants herein.

The contract upon which the suit was predicated was a written agreement as follows:

"The National Bank of Cleburne.
"Cleburne, Tex., May 9, 1921.
"Mr. M. M. Pittman, Pres., Cleburne, Texas—Dear Sir: In consideration of the execution and prompt payment of three notes executed by you to the above bank on this date, as follows. $2,316.47, Jan. 9, 1922; $3,000.00, Feb. 9, 1922, and $3,000.00, March 9, 1922, we agree to lend you as much as $14,000.00 additional money to purchase wheat this season, said wheat to be stored in separate elevator, and chattel mortgage satisfactory to said bank to be executed by you to secure the payment of this advance of money and same to be repaid as wheat is milled or as notes mature.
"Yours very truly,     S. B. Norwood,
"President."

Appellee complied with his part of the agreement.

The three main defenses were: (1) The agreement was ultra vires; (2) without consideration; and (3) the alleged damages were too remote and uncertain to base a recovery upon.   The case was tried by the court without a jury and the court made and filed his findings of fact and conclusions of law and thereupon entered a judgment in favor of appellees against the National Bank of Cleburne and A. P. Woolridge, receiver, for the sum of $8,400, which judgment further provided that the judgment against Woolridge was not personal but only against him in his official capacity.   A statement of facts was also filed in the case.   Findings of fact and conclusions of law were also made and filed by the court.

Not following the order of assignments and propositions, we will dispose of the important questions raised in the order of their logical sequence rather than as presented by counsel.

[1] Considering first the question raised that under the laws of the United States there is no power expressed or implied that authorized a president of a national bank to make the contract such as here exhibited without express authority from the board of directors or from the by-laws, or any ratification thereof by such board:

At the time of this transaction, appellee was a customer of said bank, having borrowed the sum of $22,000 from the bank through its president; he had repaid $14,000 thereof, leaving a balance of approximately $8,000 due the bank when the suit was filed.   Pittman was insolvent, owing large sums of money, and the roller mill was his and his wife's homestead.   The president of the bank, for the bank, persuaded Pittman to incorporate the mill in consideration that Pittman would do so and execute his notes to the bank; it agreed on its part to loan to such corporation the sum of $14,000.   This was done, and the corporation executed to the bank its three notes for the Pittman debt aggregating $8,316.47, and the bank agreed to loan the $14,000 additional, to purchase wheat during the season, and appellee turned over the mill stock to the bank to secure the claim.   Obviously the bank, realizing it had no security for its past indebtedness, and realizing the only asset appellee had was the mill, his homestead, it induced appellee by this promise to incorporate, and appellant agreed to advance the money to buy wheat for the business in hand which obtained all the security needed for the past debt, thereby putting itself in a better position and the appellee at a very great disadvantage and in a worse fix.

Here we may discuss together whether the doctrine of ultra vires or failure of consideration each together or separately will defeat the contract and save appellant from the consequences of its wrong.   It has been well settled that when such transactions are within the general scope of the business of the corporation, as this obviously was, and in its interest and for its benefit, based upon a valuable consideration, and such as the grantor has power to receive, it is valid.   Cook on Corporations, vol. 2, § 775; Reese on Ultra Vires, §§ 47–50, 105; Bond v. Terrell Cotton & Woolen Mfg. Co., 82 Tex. 309, 18 S. W. 691; Exchange Bank of Fort Worth v. Hensley & Roland (Tex. Civ. App.) 240 S. W. 679; Border National Bank v. Am. National Bank (C. C. A.) 282 Fed. 73; Thompson v. St. Nicholas Bank, 146 U. S. 240, 13 Sup. Ct. 66, 36 L. Ed. 956; Hanover National Bank v. First National Bank, 109 Fed. 421, 48 C. C. A. 482; Boston & Tex. Co. v. Guaranty Life Ins. Co. (Tex. Civ. App.) 233 S. W. 1025.   Here, the bank holding a claim against appellee induced him to incorporate the mill property, the homestead, and take its stock as collateral security for the debt, and on its part agrees to furnish money to appellee to purchase wheat to carry on its business, then after securing this security for its past debt breaches the contract, and leaves the appellee without means to carry on its business.   We do not think the appellant is in a position to set up such a defense.   The transaction was in the line of the business the bank was engaged in.

[2] On the question of damages and loss of profits: It was in the contemplation of the minds òf the partieş that appellee was to purchase wheat for the business he was engaged in, that of buying wheat and storing it up in elevators especially in harvesting time when wheat was selling at a low price to sell at a higher price.

If the bank had advanced money to the mill as agreed, the mill could have bought wheat at an average price of $1 per bushel and could have sold the same at an average price of $1.60 per bushel, such being the local market price. The mill elevators for storing wheat were steel structures, almost fireproof. The mill was relying on the bank to furnish the money to purchase from local farmers in June and July, 1921, but on account of appellants' wrong had to buy wheat in the north and have it shipped to the Cleburne Mill, causing the loss. The wheat that was to be purchased was to be placed under mortgage in the steel elevators of the fireproof mill and debt paid as the wheat was milled.

It was the custom of appellee to engage in such business, and the experience of both parties that the wheat to be purchased was lower at Cleburne in June and July, when the farmers harvested and hurried to market with it for quick sale and ready money.

The testimony of appellee on the point was:

"There was a pretty good crop of wheat that year. It came in in small quantities in wagons. I didn't confine my buying to this immediate section; I bought wheat elsewhere. I confined my purchases here as much as I could. I was relying on this money to fill my elevators with wheat. After the wheat here was gone, after it was bought and shipped out, I had to buy at other points. I bought wheat in the north and had it shipped in here. I still have wheat coming in here from other points."

Profits to be recovered are such as are ordinarily within the contemplation of the minds of the parties at the time of the contract. The profits must be reasonably certain, such as naturally are presumed to follow from the breach, and arrived at and proven. We do not think they are here more speculative and uncertain than have been permitted to be recovered under a long line of Texas cases nor any more contingent than is that class of profits recovered in Texas for crops that might have been made, harvested, and sold, where the amount can be ascertained with reasonable certainty. Grand Prairie Gravel Co. v. Wills (Tex. Civ. App.) 188 S. W. 680; Reagan Round Bale Co. v. Dickson, 55 Tex. Civ. App. 509, 121 S. W. 526; Railway v. Hill, 63 Tex. 381, 51 Am. Rep. 642; Railway v. DeGroff, 102 Tex. 433, 118 S. W. 134, 21 L. R. A. (N. S.) 749; American Co. v. Caswell (Tex. Civ. App.) 141 S. W. 1013; Walter Box v. Blackburn (Tex. Civ. App.) 157 S. W. 220; King v. Griffin, 39 Tex. Civ App. 497, 87 S. W. 844; Pittman v. Block,

48 Tex. Civ. App. 320, 106 S. W. 724. It is apparent here that when this suit was brought, the facts were determined without conjecture as the profits were then ascertainable. The crops had been made and harvested.

The various phases of such measure of damages for loss of profits is discussed and sustained by the following cases: G. H. & S. A. v. Baudat, 21 Tex. Civ. App. 236, 51 S. W. 541; Houston v. Hill, 63 Tex. 381, 51 Am. Rep. 642; Simmons v. Brown, 5 R. I. 299, 73 Am. Dec. 66; Anvil Mining Co. v. Humble et al., 153 U. S. 540, 14 Sup. Ct. 876, 38 L. Ed. 814; 17 C. J. 778; Am. Const. Co. v. Caswell (Tex. Civ. App.) 141 S. W. 1013; U. S. v. Behan, 110 U. S. 338, 4 Sup. Ct. 81. 28 L. Ed. 168; Telegraph v. Hall, 124 U. S. 444, 8 Sup. Ct. 577, 31 L. Ed. 479; Pennybacker v. Jones, 106 Pa. 237; Howard v. Stillwell, 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147.

The proof in this case is such as required us to very carefully read the record and all the authorities cited by both sides. We believe the damages suffered are the proximate result of the breach of the contract by appellant bank, and there was sufficient material testimony presented to support the findings of the court, and we think the damages were susceptible of ascertainment.

We do not think appellants have assigned any error that should cause a reversal of the judgment in this case, hence they are severally overruled, and the judgment is accordingly affirmed.