FIRST NATIONAL BANK OF JONESBORO *v*. GLASS.

Opinion delivered April 23, 1917.

1. TIMBER—SALE—EXECUTORY CONTRACT WITH EQUITABLE MORTGAGE. G. conveyed the timber on certain land to H., the deed being absolute in form, and reciting the payment of a consideration. Simultaneously the parties entered into another agreement, reciting the above sale and that H. had loaned G. a certain sum, G. agreeing to cut and load bolts at so much per cord, a certain amount of which was to be credited on the loan.   *Held*, the two instruments constituted in effect an executory contract for the sale and delivery of the timber, and an equitable mortgage on the timber for the repayment of the advanced purchase price.

2. TIMBER SALE—LIMITATIONS.—In a contract for the sale of timber, no time was specified for the delivery of the timber or the repayment of the purchase price; *held* the running of the statute of limitations would begin upon a demand and refusal to perform the contract.

3.  TIMBER—SALE—LIMITATIONS.—H. purchased timber from G., G. agreeing to repay by a delivery of the timber to H., and the promise to pay being in writing, the five-year statute of limitations applies.

4.  TIMBER DEED—EFFECT OF RECORD.—Where a timber deed is recorded, it constitutes constructive notice to subsequent purchasers, not only as to the existence of the conveyance, but also as to extension of time for removing the timber.

Appeal from Craighead Chancery Court; *Chas. D. Frierson,* Chancellor; affirmed.

*Lamb, Turney & Sloan,* for appellants.

1. The deed as limited by the contract is a legal mortgage. The two must be construed as one instrument. 117 Ark. 308; 1 Jones on Mortg. (1916 ed.), § 242; 103 Ark. 494; 41 Mich. 490; 63 Tex. 506; 117 Ark. 308; 63 *Id.* 51; 114 S. W. 763; 20 Mass. 484; 36 Ky. (Dana) 473; 112 N. Y. 467; 39 So. 1023; 48 Ala. 99.

2. As a legal mortgage it is barred by limitation. 87 Ark. 228; 61 *Id.* 118.

3. As an absolute grant, appellee's contingent legal title to the timber has terminated. No time was specified and the law only implies a reasonable time. 77 Ark. 116. The appellees lost their rights by abandonment and lapse of time. Their remedy expired with the debt. 28 Ark. 27, 510; 71 *Id.* 164; 43 *Id.* 469; 83 *Id.* 278; 123 *Id.* 161; 122 *Id.* 530; 53 *Id.* 367; 43 *Id.* 464; 28 *Id.* 267; 47 *Id.* 301; 53 *Id.* 367; 47 *Id.* 314.

4. The equitable remedy is unavailable against *bona fide* purchasers. 185 S. W. 784; 42 Ark. 362; 178 S. W. 390; 28 S. E. 336; 105 Pac. 252; 146 N. W. 343.

5. The equitable remedy is barred by acquiescence and laches. 13 S. W. 722; 86 *Id.* 574; 56 *Id.* 202; 84 *Id.* 412; 39 *Id.* 134; 83 *Id.* 500; 120 *Id.* 115; 103 *Id.* 254; Pom. Eq. Jur., § § 817-18.

6. The deed should be canceled. 106 Ark. 207; 120 *Id.* 115; 94 *Id.* 122.

*Stayton & Stayton* and *Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellees.

1. The deed and contract do not constitute a legal

mortgage. It was an absolute transfer of the timber. 1 Jones on Mortg., § § 60, 241, 242.

2. Williams had an equitable lien on the timber to secure repayment of the purchase money. 3 Pom. Eq., § 1263; 30 Ark. 686, 692; 69 *Id.* 442; 73 *Id.* 331; 75 *Id.* 336; 103 *Id.* 88; 118 *Id.* 192, 198. Plaintiff acquired its rights with full knowledge of the facts. 69 Ark. 442; 84 *Id.* 603; 86 *Id.* 202; 118 *Id.* 192; 2 Sum. 486; 51 Ark. 333, 338; 52 *Id.* 439; 60 *Id.* 595; 91 *Id.* 268, 272.

3. The claim is not barred. 83 Ark. 278, 281; 122 *Id.* 530; 123 *Id.* 161; 44 Oh. St. 210. Nor was the debt even barred, but if so the lien was not.

4. The timber deed had not expired. 77 Ark. 116; 77 *Id.* 116.

5. Appellant was not a *bona fide* purchaser without notice.

6. Appellee is not barred by laches nor acquiescence. 84 Ark. 603; 118 *Id.* 192.

McCULLOCH, C. J.  J. M. Glass, one of the appellees, owned 3,000 acres of timber land in Arkansas, and on April 9, 1904, conveyed the white oak timber by deed, absolute in its terms, to the H. D. Williams Cooperage Company, a corporation, the deed reciting a consideration of $10,000, receipt of which was acknowledged in the deed. No time was specified in the deed for removal of the timber, but the chancellor found on hearing the cause, and it is now conceded in the briefs, that four years was not an unreasonable time within which to remove the timber. Simultaneously with the execution of the deed the parties entered into a contract in writing, which, after reciting the aforesaid sale and conveyance of the timber and that the H. D. Williams Cooperage Company had "loaned and advanced" to J. M. Glass the sum of $10,000, stipulated that Glass was to cut the timber into stave bolts and to haul the same and load on cars as directed by the cooperage company for $9 per cord, of which sum $3 per cord was to be credited on the

amount loaned and advanced aforesaid by the company to Glass.  The contract further provided that in the event Glass should be unable to cut and haul the stave bolts as directed by the cooperage company then said company should proceed to have the cutting and hauling done at the expense of Glass.  Said contract concluded with the following clause:

"7.  It is understood between the parties hereto that the performance of the obligations of this contract assumed by the party of the first part (J. M. Glass) is not divisible, and that a refusal on his part to perform any of the duties devolving upon him by the terms hereof shall be deemed by the parties hereto as a refusal on his part to perform all and singular the terms of the contract devolving upon him."

J. M. Glass commenced work under the contract in the summer of 1904, but after continuing a short while stopped on account of labor troubles, and there was no further attempt made to cut or remove the timber.  Correspondence took place between the parties year after year concerning the cutting of the timber, in which correspondence the cooperage company made requests of Glass that he proceed with the cutting and delivery of the timber, but it was agreed from time to time that on account of the years being wet ones it was impossible to cut the timber out.  In the year 1908 the cooperage company moved its mill off the line of railroad to which the timber was accessible and notified Glass that because of that fact it would not be convenient for it to handle the timber, and it was orally agreed between the parties that Glass could sell the land and repay the sum advanced out of the proceeds of the sale.  There was no further correspondence until February 7, 1912, when the cooperage company addressed a letter to Glass reciting the transactions of the past concerning the agreement for Glass to sell the property and repay the loan, and the letter concluded as follows:

"We have been disposed to meet your wishes in the matter of handling this contract during all these years, and our desire to help you has resulted in more than a little inconvenience and loss to us, and if you have no immediate prospects of disposing of the property in such a way that our advancement will be repaid to us, it seems to me that during this year, or as soon as the weather will permit, that we should disregard any further selling negotiations and proceed with the working of the timber under the contract as originally contemplated; and especially is this true as we understand you arranged for a sale of a portion of this land recently and reserved eighteen months to remove the timber. With this end in view, I am going to ask you to see that we are notified just as soon as the condition of the country will permit you operating on this land.

"If in the meantime you should have any proposition for the sale of the property, which will enable you to make us a firm offer for the release of our contract, we will, of course, consider it."

The reply of Glass to this letter is not in the record. He testified, however, that he replied to the letter, but fails to give the substance of his reply. Nothing further transpired between the parties, and nothing has ever been paid on the $10,000 advanced by the cooperage company to Glass.

Glass mortgaged the land to J. E. Franklin in July, 1913, to secure a loan of $17,500, and this mortgage was subsequently foreclosed by a decree of the chancery court. Appellant, First National Bank, became purchaser, deed being executed by commissioner with the approval of the court on February 10, 1915. On September 4, 1915. H. D. Williams Cooperage Company was adjudged a bankrupt, and H. A. Dinsmore was appointed trustee in bankruptcy. The H. D. Williams Cooperage Company had previously executed to the Mercantile Trust Company a mortgage embracing the timber in con-

troversy, and the mortgage was foreclosed under a decree in the chancery court, a sale of the timber was made by a commissioner to the Export Cooperage Company, conveyance being executed to the latter under order of the court.

This action was instituted by appellants on July 8, 1916, praying for cancellation of the timber deed to H. D. Williams Cooperage Company as a cloud on their title, alleging as a ground for the removal of the cloud that a reasonable time for the removal of the timber had expired. The Export Cooperage Company intervened as the successor of the title to the H. D. Williams Cooperage Company, and prayed that the timber deed be construed as a mortgage, and that it be foreclosed. The chancellor on final hearing dismissed the complaint of the appellants for want of equity, and rendered a decree in favor of the Export Cooperage Company on its cross-complaint, declaring that the timber deed from Glass to the H. D. Williams Cooperage Company, and the aforesaid contract between those two parties, constituted an equitable mortgage, and a decree to foreclose the same was rendered fixing four years from the date of the commissioner's deed as a reasonable time for the purchaser at the sale to remove the timber.

It is contended on behalf of appellants that the two instruments of writing between Glass and the H. D. Williams Cooperage Company should be construed together as one instrument, and that when so construed they constituted either an absolute and unconditional sale of the timber or a legal mortgage, and that in either event the rights of the grantee had been barred by lapse of time. The contention is that if the instrument be construed as an unconditional sale of the timber, the rights are barred because of the timber not being removed within a reasonable time; and that if the instrument be construed to be a legal mortgage, the debt secured is barred by the statute of limitation. We do not think that either of the

contentions of learned counsel is sound. It is correct to say that the two instruments being executed contemporaneously and covering the same subject matter should be construed together as one contract. *Dicken* v. *Simpson,* 117 Ark. 304. When thus construed, it is evident that the writing does not constitute an unconditional sale and delivery of the timber so as to require the purchaser to remove the timber within a reasonable time. To so construe the contract would be to ignore entirely the provisions of the second instrument whereby Glass undertook for the consideration named to cut the timber into stave bolts and to haul it to the railroad and load it on cars, a part of the price to be credited on the sum advanced. On the other hand, the two instruments construed together do not constitute a legal mortgage, for the second instrument does not contain an unconditional defeasance. The grantee was, under the contract, to have the timber in any event, and the right to take the timber was not to be cut off by a payment of the debt.

(1) We think that the instruments constituted in effect an executory contract for the sale and delivery of the timber, and an equitable mortgage on the timber for the repayment of the advanced purchase price. The deed was not intended as a completed sale and delivery of the timber, for it is evident that the delivery was to be postponed to some future date, and the failure of the grantor to complete the sale created a lien in the nature of an equitable mortgage to secure the repayment of the advanced purchase price. 3 Pomeroy's Equity Jurisprudence, § 1263.

(2) No time was specified in the contract for the delivery of the timber or the repayment of the purchase price, so the running of the statute of limitation must necessarily have begun upon a demand and refusal to perform the contract. According to the evidence in the case there never was an unqualified demand or refusal. Performance was postponed by mutual agreement

from year to year, and it was agreed that the matter should be settled by Glass procuring a purchaser of the land and timber, and repaying the purchase money out of the sum received. The last communication between the parties was the letter of February 7, 1912, written by the H. D. Williams Cooperage Company to Glass and the latter's reply some time later. It is doubtful if that incident can be treated as a demand and refusal so as to put the statute of limitation in motion, but, at any rate, it can be definitely said that the statute did not begin to run at an earlier date.

(3-4) There was an express undertaking on the part of Glass in the contract to repay the price by a delivery of the timber. Therefore, the promise to pay being in writing, five years is the statute of limitation applicable to the case. *Coleman* v. *Fisher,* 67 Ark. 27. This litigation was begun and concluded in the court below within that period, so it follows that the rights under the timber deed are not barred. The court was correct, we think, in reaching the conclusion that the instruments of writing constituted an equitable mortgage; that the same was not barred by limitation, and in decreeing a foreclosure. The timber deed was duly recorded and constituted constructive notice to subsequent purchasers not only as to existence of the conveyance but also as to extension of time for removing the timber (*Mullins* v. *Wilcox,* 124 Ark. 17), therefore appellants can not be treated as innocent purchasers and the facts related concerning the agreements between the parties for postponement of the removal of the timber permits the application of the doctrine of laches, which appellants invoke.

Decree affirmed.