## BERING MFG. CO. v. W. T. CARTER & BRO. (No. 915.) *

(Court of Civil Appeals of Texas. Beaumont. Oct. 19, 1923. Rehearing Denied Oct. 31, 1923.)

I. Corporations ☞503(2)—Corporation sued on demands arising from rescaling of timber and surveying of lands in county of suit held not privileged to be sued in county of domicile.

A private corporation contracting to exchange timber for timber to be cut and removed from lands in a county wherein suit was brought against it on demands arising from the rescaling of the timber and surveying of the land therein *held* not privileged to be sued in the county of its domicile; the cause of action arising, at least partly, in the other county. Rev. St. art. 1830, subds. 5, 24.

2. Limitation of actions ☞118(2)—Delay in service of citation at defendant's request and negotiations for settlement not bar.

While the petition must be filed with intent that citation be issued at once and served on defendant, to stop the running of the statute, delay in service because of defendant's request that no further costs be incurred and negotiations for settlement will not be charged to plaintiffs' negligence, so as to bar their cause of action.

3. Limitation of actions ☞199(1)—Negligence and delay in procuring service of citation held question of fact for court.

Whether plaintiffs were guilty of such negligence and delay in procuring service of citation on defendant as to bar their cause of action *held* a question of fact for the trial court sitting without a jury.

4. Limitation of actions ☞46(6)—Action for value of excess timber cut under exchange contract not barred, where brought within statutory period after defendant's repudiation.

A cause of action based upon a contract for exchange of timber, for the value of timber cut from plaintiff's lands in excess of the quantity contracted for and not covered by conveyance to plaintiff of an equal quantity *held* not barred, where performance of the contract was extended by a subsequent agreement, and suit was brought within the statutory period after defendant's repudiation of the extension agreement.

5. Limitation of actions ☞46(2)—Contract to convey timber equal in quantity to excess cut under prior contract held not performable on demand.

A contract to convey timber equal in amount to the excess quantity cut by defendant under a contract of exchange *held* not an obligation performable on demand, so as to start the statute running from the date of the contract, but an executory contract to be performed when all matters had been arranged "to the satisfaction of both parties" as therein provided.

6. Logs and logging ☞10(1)—Party agreeing to pay cost of rescaling held not relieved by mutual abandonment of contract from liability for cost theretofore accrued.

A corporation, agreeing to pay the entire cost of rescaling timber cut under a prior contract *held* not relieved, by mutual abandonment of the rescaling agreement, from liability for costs theretofore incurred thereunder.

7. Contracts ☞274—Whether cancellation discharges parties from all liability depends on intention, character of contract, and attending circumstances.

Parties to a contract may agree to cancel it, and, if nothing indicates a different intention, each will be fully discharged from liability, but the use of the words "rescind," "cancel," or "abandon" will not necessarily have such effect; liability depending on the terms of the agreement in the light of the parties' situation and intention, the character of the contract, and all the attending facts and circumstances.

8. Estoppel ☞52—"Waiver" defined.

A waiver exists only where one, with full knowledge of a material fact, does or forbears to do something inconsistent with the existence of a right or his intention to rely thereon.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Waiver.]

9. Damages ☞67—Interest allowable as damages when necessary to indemnify for injury inflicted, though statute is silent.

Interest eo nomine cannot be allowed, unless expressly provided by statute, but may often be assessed as damages, when necessary to indemnify a party for an injury inflicted, though the statute be silent.

10. Damages ☞68—Interest eo nomine held not recoverable for breach of contract to pay costs of rescaling timber.

Interest eo nomine for breach of a contract to pay the cost of rescaling timber and resurveying land *held* not authorized by Vernon's Sayles' Ann. Civ. St. 1914, art. 4977; not being founded on a written contract ascertaining the sum payable and hence allowable only as damages or punishment if pleaded.

11. Damages ☞157(4)—Recovery of interest as damages cannot exceed amount claimed.

When interest is claimed as damages, the pleadings must demand enough to cover both the loss or damages and interest, as the recovery cannot exceed the amount claimed.

12. Appeal and error ☞1140(4)—Judgment for more than claimed may be reformed, where excess is definite and ascertained.

A judgment for more than the amount claimed need not be reversed and the cause remanded, where the excess is definite and ascertained, but may be reformed by striking out the amount thereof.

---

Appeal from District Court, Polk County; J. L. Manry, Judge.

Action by W. T. Carter & Bro. against the Bering Manufacturing Company. Judgment for plaintiffs, and defendant appeals. Reformed and affirmed.

Carothers & Brown, of Houston, for appellant.

Baker, Botts, Parker & Garwood, of Houston, and Feagin, German & Feagin, of Livingston, for appellees.

O'QUINN, J. On May 17, 1907, appellant was a corporation organized under the laws of the state of Texas, with its principal office in the city of Houston, Harris county, Tex., but was engaged in operating a sawmill for the manufacture of lumber at Bering, in Polk county, Tex. Appellees constituted a partnership, and were also engaged in the manufacture of lumber at Camden, Polk county, Tex. Bering Manufacturing Company owned a number of tracts of land situated a considerable distance from its sawmill and its tramroad, with intervening tracts of land that it neither owned nor controlled, and across which it could not obtain a tramroad right of way. The appellees also owned various timbered tracts of land, and the timber on other tracts situated at considerable distance from its plant, but near to and easily accessible to appellant's tram. On said date the said Bering Manufacturing Company was about out of timber accessible to it, and, upon its solicitation, appellees, W. T. Carter & Bro., entered into an exchange of timber with it, as follows:

"The State of Texas:

"This contract, made and entered into by and between W. T. Carter & Bro., a firm composed of W. T. Carter, Earnest Carter, and Jack Thomas of the first part, and the Bering Manufacturing Company, duly incorporated under the laws of this state, its principal office at the city of Houston, of the second part, witnesseth:

"(1) Each party to this contract grant to the other party a right of way over all land owned by said parties, for tramroad and railroad purposes of the width of 50 feet, and to a greater width where it is necessary in building a tramroad or railroad, to use dirt or sand in construction. This right of way extends to and for the benefit of the Bering, Kiam & Southern Railroad, a majority of whose stock is owned by the party of the second part hereof.

"(2) The party of the second part is to convey to the party of the first part the pine timber owned by said party on the following tract of land, to wit:

"J. S. Gilliland, J. Wrigley, C. Devore, the N. E. ¼ of the James Simmons, George Allen, Seth Batson, H. Schroder, John Warden, F. C. Bering, Houston & Texas Central Railway section 28; J. Butler, F. Prentiss, Thomas Waring, B. F. Waring, F. G. Waring, L. Castillian, G. Arrango. (The Schroder, Batson, F. G. Waring and the G. Arrango are situated partly in Tyler county. The other tracts are situated in Polk county.)

"(3) The party of the first part is to convey to the party of the second part the pine timber owned by said party on the following tracts of land, to wit:

"M. S. Womack league (west of Bear creek), M. S. Parker, Robert Oates, Joseph Gassiott, A. Lott, J. J. Cannon, W. I. Hanley, B. F. Ellis, M. Tanner, R. Wilborn, I. D. Thomas league, J. D. Blair, H. H. Cone league, I. H. Pate league, M. Swinney, said tracts situated in Polk county.

"(4) The party of the second part is not to buy timber south of a line drawn east and west from the north corner of the Escobeda league.

"(5) The party of the first part is not to buy timber west of Bear creek from the north corner of the Escobeda league up to a point where Bear creek strikes the northeast line of the Womack league, and from thence with the northeast line of the Womack league to the northeast corner of the Womack league. From thence north from the north corner of the Womack league to the R. W. Russell survey, thence westerly to southeast corner of John Dickenson league. The party of the first part is not to buy timber west and south of the boundaries here given, and the party of the second part is not to buy timber east and north of said line.

"(6) Either party can buy land and timber west of the H. E. & W. T. Ry.

"(7) The party of the first part in conveying by deed the pine timber embraced in this contract to the party of the second part is to warrant the title to the timber so conveyed; provided, however, that where the timber so owned is for a limited time, then the time limited is to be shown by the conveyance, and, provided further, that whatever rights the party of the first part owns in and to the timber so conveyed is to be transferred to the party of the second part.

"(8) The party of the second part in conveying by deed the pine timber embraced in this contract to the party of the first part is to warrant the title to the timber so conveyed; provided, however, that where the timber so owned is for a limited time, then the time limited is to be shown by the conveyance, and provided further, that whatever rights the party of the second part owns in and to the timber so conveyed is to be transferred to the party of the first part.

"(9) The pine timber provided by this contract to be conveyed by the party of the second part to the party of the first part will be first scaled and measured as hereinafter provided, and the full amount computed and ascertained as provided in this contract. When this is done, the timber provided to be conveyed by the party of the first part to the party of the second part will also be scaled and measured as hereinafter provided, and the full amount computed and ascertained as provided by this contract. Then when this is done, whatever amount of pine timber is found to belong to the party of the second part, an equal amount of pine timber belonging to the party of the first part will be conveyed to the party of the second part; this contract being an exchange of pine timber by and between the parties in equal proportions as herein stated, and

it is not intended by this contract that the party of the first part shall convey to the party of the second part any more in feet than is conveyed by the party of the second part to the party of the first part hereunder.

"(10) In measuring the pine timber belonging to the party of the first part to be conveyed to the party of the second part, the timber in exchange nearest to the mill of the party of the second part is to be conveyed by the party of the first part, so that the timber conveyed by the party of the first part to the party of the second part in exchange will be nearest the mill of the party of the second part.

"(11) The deeds herein provided are to be legally executed, and the timber transferred as herein provided so soon as the timber can be scaled and measured and the amounts ascertained upon which this exchange is made.

"(12) The party of the second part in consideration of the exchange of timber and the rights and privileges embraced and included by the terms of this contract is to pay the party of the first part $12,500.

"(13) The pine timber to be scaled and measured under and by the terms of this contract will be done by two men to be agreed upon by the first and second parties hereto. If either party at any time during the scaling and measuring of the pine timber herein provided becomes dissatisfied with either or both of the scalers, the scaling and measuring shall at once stop, and the parties shall agree upon another scaler or scalers to take the place of the scaler or scalers so discharged by the terms of this contract, and this process shall continue during the entire time of scaling and measuring.

"(14) The pine timber to be scaled and measured, under and by the terms of this contract is to be scaled, measured, and computed by the scale of W. T. Carter & Bro., a copy of which is furnished by the party of the first part to the party of the second part, and with which the party of the second part is already advised.

"(15) The party of the second part is to convey by warranty deed to the party of the first part the William Sloan tract of land of 415.5 acres and 333 acres of the Sina Runnels league of land, bought from the Leon & H. Blum Land Company by F. C. Bering for the same amount of money that was paid for said land by the party of the second part or by F. C. Bering, together with interest thereon at 6 per cent. per annum from the date of purchase until the date of this contract. The Sloan tract was not purchased from Blum, but this applies to that tract and for the amount paid therefor by F. C. Bering the vendee.

"(16) It is agreed by and between the parties to this contract that in case either party shall buy timber in that locality set apart for the other party, then the purchaser shall pay to the other party as contractual damages the manufacturer's profit on whatever amount of timber that is so purchased by said party.

"(17) That part of this contract set forth in paragraphs 4, 5, and 6, limiting the territory in which the parties are to purchase land and timber shall expire whenever either of the plants the said parties are now operating shall permanently cease to do business.

"(18) It is further understood that nothing in this contract is to interfere in any way with the pending exchange of timber between said party of the first part and the Livingston Lumber Company by which the said party of the first part is to acquire that part of the H. H. Cone survey now owned by said Livingston Lumber Company, and said Livingston Lumber Company is to acquire the P. Whittaker, B. Townsend, and a part of the I. H. Pate surveys now owned by said party of the first part.

"Witness our hands this the 17th day of May, A. D. 1907. W. T. Carter & Bro., by W. T. Carter. Bering Manufacturing Co., by F. C. Bering, Secretary. [Seal.] Bering Mfg. Co., per Conrad Bering, President."

Out of this contract grew the present controversy. Appellees sued appellant to recover items of expense, aggregating the sum of $1,608.82, alleged to have been incurred in connection with the rescale of certain timber which had been cut under the above contract, and which was situated mostly in Polk county, and also sued for the value of 128,000 feet of timber alleged to have been cut by appellant on land of appellees, and removed therefrom, in excess of timber conveyed in exchange by appellant to appellees. Appellant answered, pleading its privilege to be sued in Harris county, Tex., its domicile, and subject to such plea, answered, denying generally the allegations of appellees, and specially pleading the two and four year statutes of limitation to appellees' cause of action, and also specially pleading that appellant and appellees had entered into an agreement to cancel and terminate the rescaling agreement, and to settle by the original scale, with the understanding that everything else in connection with the rescaling agreement should be waived.

Appellees controverted appellant's plea of privilege on the grounds: (1) That appellant was a corporation, organized and doing business under the laws of the state of Texas, and that the suit was based upon a contract in writing executed by appellant, performable in Polk county, and that during the performance of said contract appellant maintained an agent and representative and conducted its lumber manufacturing business in said Polk county; and (2) that the cause of action, within contemplation of article 1830, subd. 24, Revised Statutes, arose in said Polk county. Appellees, also by supplemental petition, replied to appellant's answer by general denial and special pleas.

The case was tried before the court without a jury, and the court overruled appellant's plea of privilege, and rendered judgment in favor of appellees for $3,063.95, to which appellant excepted, and from which it has brought this appeal.

At the request of appellant, the court filed his findings of fact and conclusions of law, which are:

"Findings of Fact.

"First. I find that on May 17, 1907, the Bering Manufacturing Company, defendant herein, a Texas corporation, was engaged in

a general sawmill business, with a sawmill and manufacturing plant, situated at Bering in Polk county, Tex., where it had an office and place of business, with W. D. Winston as its general manager. That at said date the said Bering Manufacturing Company had cut and manufactured practically all of its available and accessible timber, and was greatly in need of additional timber with which to carry on its operations. That immediately prior to the said 17th day of May, 1907, the Bering Manufacturing Company and the plaintiff, W. T. Carter & Bro., made a contract and agreement, which was executed by them on the 17th day of May, 1907, as shown by the written contract in evidence in this cause. That in the making of said contract the Bering Manufacturing Company was represented by its general manager, W. D. Winston, and W. T. Carter & Bro. were represented by W. T. Carter. That said contract in evidence contemplates the exchange of pine timber owned by said parties to the amount of approximately 50,000,000 feet; it being the intention that each of the parties should receive in said exchange a like quantity of pine timber, to be scaled and estimated as provided for in said contract. That the timber owned by W. T. Carter & Bro., which was exchanged to the Bering Manufacturing Company, was located in close proximity to the logging road of the Bering Manufacturing Company, and was in every way accessible to it, and so situated as to be easily appropriated and manufactured by the said Bering Manufacturing Company, and therefore of much greater value to Bering Manufacturing Company that its own timber which was remote from its mill and so situated as to require long lines of logging road to reach, and Bering Manufacturing Company had no right of way.

"Second. I find that immediately after said contract was entered into the scaling of timber belonging to W. T. Carter & Bro. was begun, and the Bering Manufacturing Company began promptly to cut, remove, and manufacture the same, and that it continued the operation of cutting, removing, and manufacturing said timber continuously until about the first of the year 1911, when all of said timber exchanged to it by the said W. T. Carter & Bro., and aggregating approximately 50,000,000 feet, was cut and removed from the lands of the said W. T. Carter & Bro. That during said time there was scaled of timber belonging to the Bering Manufacturing Company for the said W. T. Carter & Bro., a quantity of timber of approximately 50,000,000 feet, but which was in amount 821,953 feet less than the amount of timber belonging to W. T. Carter & Bro. which had been scaled for Bering Manufacturing Company, and which had been cut, removed, and manufactured by it. That all the timber which was exchanged by W. T. Carter & Bro. to the Bering Manufacturing Company and which was cut and removed by it was situated on lands in Polk county, Tex., and that practically all of the timber which was exchanged by the Bering Manufacturing Company to W. T. Carter & Bro. was situated in Polk county, Tex. That during the period from May 17, 1907, to the year 1911, W. T. Carter & Bro. had cut and removed a portion of the timber exchanged to them by Bering Manufacturing Company, but a considerable portion thereof was not cut or removed at that date.

"Third. I find that during the year 1911 and prior to October 7, 1911, the said W. T. Carter & Bro. and the said Bering Manufacturing Company had a settlement and accounting in which they adopted the scales and estimates that had been made, and reached an agreement as to the amount of timber that had been cut and removed by the Bering Manufacturing Company, and which was formerly owned by W. T. Carter & Bro., and the amount of timber that had formerly been owned by the Bering Manufacturing Company and scaled for W. T. Carter & Bro. That in this settlement it was found that the Bering Manufacturing Company was due W. T. Carter & Bro. 821,953 feet in full settlement of the exchange contract, and was due W. T. Carter & Bro. the further amount of 128,000 feet to equal timber that had been cut over the line on the W. T. Carter survey. That said agreement and settlement was made and in all things concluded by the parties, and was in all things satisfactory to W. T. Carter & Bro.

"Fourth. That on October 7, 1911, Bering Manufacturing Company wrote a letter to W. T. Carter & Bro., in which it expressed a dissatisfaction with the scaling of the timber that had been made and the agreement of settlement that had theretofore been entered into, and in which it requested W. T. Carter & Bro. to employ a scaler for the purpose of rescaling the timber covered by the contract. That some time thereafter in a conference in the city of Houston between W. T. Carter, representing W. T. Carter & Bro., and A. C. Bering, representing Bering Manufacturing Company, W. T. Carter for W. T. Carter & Bro. expressed satisfaction with the previous scale and account, but agreed to a rescale of the timber if the Bering Manufacturing Company desired and requested the same. That shortly thereafter the Bering Manufacturing Company again expressed dissatisfaction with the previous scale, and at its request the agreement for rescale, evidenced by Carter's letter to Bering, dated March 8, 1912, and Bering's letter to Carter, dated March 25, 1912, which were offered in evidence was entered into. I find that said agreement for rescale was made at the special instance and request of the Bering Manufacturing Company, and for its particular benefit, and that the agreement was that, if by the rescale it was not found that there was as much as 1,000,000 feet difference between the old scale and the rescale of the timber of the Bering Manufacturing Company, then the Bering Manufacturing Company was to pay the entire cost of said rescale.

"Fifth. That the rescaling of said timber was begun in May, 1912, and continued until some time in November, 1912, when the same was stopped; and in July, 1913, the rescale was resumed; certain changes in the method of doing scaling having been adopted on July 16, 1913, I find that each and all of the items of expense set out in plaintiffs petition were incurred in the rescale of said timber, under the agreement between said parties, and that W. T. Carter & Bro. furnished the supplies, and paid out the respective amounts shown in said account, and that said items were all reasonable and necessary, and the amounts therefor were

the fair and reasonable values for the services and the supplies so furnished. I also find that the rescaling of said timber and the labor and services performed in connection therewith were all performed in Polk county, Tex., and that the supplies furnished were furnished and delivered and used in Polk county, Tex.

"Sixth. I find that on November 24, 1913, the rescale of said timber was called off and abandoned, and it was agreed by the parties to accept and make final settlement on the basis of the original scale of the timber which had been concluded about the first of the year, 1911, as aforesaid. That in making the agreement to abandon said rescale and accept the old scale, Bering Manufacturing Company was represented by A. C. Bering, its president, and W. T. Carter & Bro. were represented by C. West, their timber man. That at the time said agreement was made the matter of paying the expenses of the rescale was not mentioned, and at that time C. West knew nothing about the agreement with reference to the payment of such expenses. In this connection I find that Bering's proposition to West, upon which the rescale was discontinued, was that he was willing to call off the rescale, settle according to the old scale, and everything else should be waived, but West did not know the terms of the agreement as to expenses, and did not and could not waive the same. That, on the succeeding day after the agreement, the said C. West, having just learned of Bering's agreement to pay such expenses, called up A. C. Bering, and gave him notice that it was not intended to waive the prior contract of Bering Manufacturing Company to pay the costs of said rescale, and advised the said A. C. Bering that he could continue the said rescale if he desired.. That on the 23d day of December, 1913, W. T. Carter, for W. T. Carter & Bro., advised Bering Manufacturing Company in writing that it would be held to its prior contract, and would be required to pay all the costs of said rescale. That the said Bering Manufacturing Company made no effort to have said rescale resumed and did nothing towards completing said rescale; that there is no proof as to the difference between the new scale and the old scale of the Bering Manufacturing Company timber at the time the rescale was abandoned, and at the time same was abandoned Bering Manufacturing Company agreed to accept the original scale as being correct and as showing the correct amount of timber received and to be received by each of the parties.

"Seventh. I find that the cause of action for the costs and expense of making said rescale arose in favor of W. T. Carter & Bro. November 24, 1913, and that said cause of action arose in Polk county. That the original petition was filed herein on January 17, 1917. That on January 20, 1917, Bering Manufacturing Company was notified in writing by the attorneys of W. T. Carter & Bro. that it had become necessary to file suit on said account, and that petition was that day being mailed to the district clerk of Polk county, at Livingston, in which suit was being filed for the full amount due. That shortly after the receipt of said letter, the Bering Manufacturing Company sent its representative, R. B. Landram, to see the attorneys for plaintiffs, with a request to stop the suit and with the statement that the same would be settled. That shortly thereafter A. C. Bering, the president of Bering Manufacturing Company, called upon the attorneys for the plaintiffs and advised them that the Bering Manufacturing Company would take care of the suit. That citation was issued on the 6th day of February, 1917, on said original petition, and placed in the hands of C. L. Carter, attorney for the plaintiffs W. T. Carter & Bro. That negotiations by telephone and otherwise were continued between the attorneys for W. T. Carter & Bro. and Bering Manufacturing Company from time to time until September 4, 1920, when attorneys for W. T. Carter & Bro. began negotiating with attorneys for Bering Manufacturing Company. That during the time from February 6, 1917, until a short time prior to November 3, 1920, the attorneys for W. T. Carter & Bro. were relying upon the promises and agreement of the Bering Manufacturing Company to take care of and settle the controversy between them, and that the delay in having citation served was due to the fact that efforts were being made to adjust the differences, and W. T. Carter & Bro. relied upon and expected the agreement to settle the controversy to be carried out. That on the 2d day of November, 1920, Bering Manufacturing Company accepted service in this suit. That there was no negligence upon the part of the attorneys of W. T. Carter & Bro., nor did they fail to use diligence to prosecute the suit and to get an adjustment of the differences between the parties.

"Eighth. I find that on March 24, 1914, Bering Manufacturing Company, by an instrument duly executed, acknowledged that it was due and owing W. T. Carter & Bro. 128,000 feet of pine timber, which was found to be due after the close of scaling and balancing accounts, and which it agreed to convey to said W. T. Carter & Bro. at any time thereafter to suit their convenience. That in the negotiations between the parties looking to a settlement and adjustment of all their differences, the conveyance of this 128,000 feet of timber was delayed from time to time until a short time prior to November 3, 1920, when for the first time the Bering Manufacturing Company gave notice to W. T. Carter & Bro., through their attorneys, that it did not intend to supply said timber or to pay therefor. That during all of said time the said W. T. Carter & Bro. and their attorneys relied upon the written contract and agreement of the said Bering Manufacturing Company to make conveyance of said timber or to pay therefor the reasonable market value when all the matters in controversy between them were adjusted. That prior to the 9th day of June, 1920, W. T. Carter & Bro. had no notice whatever that the Bering Manufacturing Company would deny their right to said 128,000 feet of timber, or would refuse to carry out their agreement to convey the same, or to pay the reasonable value for same, and that up to that time Bering Manufacturing Company had not repudiated its agreement to convey such timber to Carter's satisfaction. That thereafter on June 22, 1921, plaintiffs amended their petition to include a demand for said 128,000 feet of pine timber or the reasonable market value thereof, which I find to be, at the time it was cut, of the value of $5 per thousand feet.

"Conclusions of Law.

"First. I conclude, as a mattter of law, that the contract of May 17, 1907, was an obligation in writing to be performed in Polk county, Tex.; that the contract for rescale of said timber which was a part of the original contract, of May 17, 1907, was a contract to be performed in Polk county, and that each of said contracts was performed in Polk county. That the services rendered and the supplies furnished constituted an essential part of the cause of action herein, and that the cause of action sued on in this case arose in Polk county. I conclude that the venue of this case is properly laid in this court, and have therefore overruled defendant's plea to the venue of the court.

"Second. I conclude that the promises and agreements made by the defendant and relied upon by the plaintiffs were sufficient to suspend the running of limitation, and the defendant is estopped to urge the plea of limitations, and I have therefore overruled said plea, and find against the defendant thereon.

"Third. I conclude that plaintiffs are entitled to recover the full amount of the account sued on, with interest thereon from January 1, 1914, and that they are entitled to recover the value of the 128,000 feet of timber, to wit, the sum of $640, with interest thereon at 6 per cent. from the date of judgment, and judgment has accordingly so been rendered."

We think the record supports each of the court's findings of fact, and we adopt same.

[1] By its first and second propositions appellant asserts that the court erred in overruling its plea of privilege to be sued in the county of its domicile, Harris county. There is no merit in the contention. Appellant contracted with appellees for the exchange of timber on land situated in Polk county, the timber thereon to be scaled and the tracts surveyed, and the timber cut and removed from said lands in Polk county, which was done, and therefore the contract was to be performed in Polk county. Furthermore, appellant is a private corporation, and this suit is for demands arising out of the rescaling and surveying of the timbers and lands constituting the subject-matter of the contract, which of necessity, had to be performed in Polk county. The land to be surveyed and the timber to be scaled were situated in Polk county, and the work done by both parties was done in said county. The rescaling and surveying, the cost of which is the basis of this suit, had, of necessity, to be performed in said county, and therefore the cause of action, at least in part, arose in Polk county. Article 1830, subd. 5, 24 Revised Statutes; Life Insurance Co. v. Boyd (Tex. Civ. App.) 214 S. W. 482; Houston Rice Milling Co. v. Wilcox & Swinney, 45 Tex. Civ. App. 303, 100 S. W. 204; Danciger v. Smith (Tex. Civ. App.) 229 S. W. 909; Equitable Mortgage Co. v. Weddington, 2 Tex. Civ. App. 373, 21 S. W. 576; Peach River Lbr. Co. v. Ayers, 41 Tex. Civ. App. 334,

91 S. W. 387; Bell County Brick Co. v. Cox & Co. 33 Tex. Civ. App. 292, 76 S. W. 607.

[2] By its third, fourth, and fifth propositions, appellant insists that the court erred in overruling its several pleas of limitation, insisting that appellees' delay in filing suit and in not having process served on appellant was brought about by and acquiesced in by appellees, and that therefore their cause of action was barred by the four year statute of limitation.

The record discloses that the cause of action arose on November 24, 1913, and that the suit was filed on January 23, 1917. Citation was duly issued and forwarded to the attorney for appellees in Houston on February 6, 1917. Citation was waived by appellant on November 2, 1920. It appears that from the accrual of the cause of action, November 24, 1913, until January 17, 1917, there had been conferences and correspondence between the parties respecting a settlement of their differences, but nothing having been agreed to on that date, the attorney for appellees wrote appellant, informing it that, all efforts to reach a settlement having failed, it was necessary to file suit, and that they were on that day forwarding petition to the district court of Polk county, which said petition was filed on January 23d and citation was issued on February 6, 1917, as above set forth. The record further discloses that upon the receipt of the letter from appellees' attorney, appellant sent their Mr. Landrum to see appellees' attorney, with the request that they stop the suit and incur no further costs. Mr. Landrum testified as follows:

"About a conversation that I had with Mr. Ralph B. Feagin, of the firm of Baker, Botts, Parker & Garwood, on January 23, 1917, with reference to a controversy then pending between W. T. Carter & Bro. and the Bering Manufacturing Company, I recall having a conversation with him. The circumstances under which I went up there were as follows: Well now, to start with, as well as I remember, we had a letter from you. That you had entered suit or were going to enter suit, I have forgotten which, and Mr. F. C. Bering asked me to go down there and see you and stop the suit, and you were not there, so they took me in to Mr. Feagin and I explained it to him, and he said he would do that, that Mr. Bering said he would settle according to the agreement you all had. Now that is all that was said, about all that was said at that time that I can recall. I did not want any further proceedings or any further costs in the case. That is it exactly."

C. L. Carter testified:

"These citations were not served because the Bering Manufacturing Company, through this conversation between Mr. Landrum and Feagin, asked that the proceeding be stopped. Following that, I had a number of conferences with Mr. A. C. Bering, and one conference, as I recall, with Mr. F. C. Bering and Mr. R. B.

Landrum, the gentleman who testified by deposition that we have read. At the time this letter was written, we had up the matter of adjusting this difference, and had not succeeded in making any agreement. That is, I had made propositions to them, none of which had been accepted, and as explained in that letter, was the reason the suit was filed. After they had made that statement about their desire to settle, I then had these other conferences, I do not know how many or how frequent. It was a difficult matter some time for me to be in town; some time a difficult matter to get hold of Mr. Bering. All of my conferences were with A. C. Bering as far as I recall, except one, that I just mentioned. After the request of Bering Manufacturing Company to hold up further proceedings, negotiations were continued between the parties until November 2, 1920."

A. C. Bering testified:

"When I came back to Houston after the filing of the suit, I called for Mr. Feagin, and told him we would take care of the suit. * * * Just like I said, Mr. Landrum told me they filed suit, and after he told me that I rung up Mr. Feagin. I told Mr. Feagin I would take care of the suit and settle the expense—I didn't say settle the expense, but I said I would take care of that suit. * * *"

We think the court did not err in overruling and finding against appellant's pleas of limitation. Appellees duly filed their petition in the proper court, and citation thereon was promptly issued before the statute of limitations had run against the cause of action, though same was not served or waiver of same obtained until November 2, 1920. While it is well settled that, in order to stop the running of the statute of limitations by the commencement of suit, the petition must be filed with the intention that the citation shall at once be issued and served upon the defendant (Ricker Lee & Co. v. Shoemaker, 81 Tex. 22, 16 S. W. 645), still, it is equally as well settled that where suit has been duly filed and citation promptly issued, but service not had upon the defendant by reason of request of the defendant that no further costs be incurred, and this followed by negotiations for settlement of the matters involved in the suit, the delay will not · be charged to the negligence of the plaintiff. Wigg v. Dooley, 28 Tex. Civ. App. 61, 66 S. W. 306; Tribby v. Wokee, 74 Tex. 142, 11 S. W. 1089; City of Belton v. Sterling (Tex. Civ. App.) 50 S. W. 1027; Davidson v. Railway Co. (C. C.) 44 Fed. 476.

[3] Whether appellees were guilty of such negligence and delay in procuring service of citation upon appellant as would make the statute of limitations apply was a question of fact for the jury. Godshalk v. Martin (Tex. Civ. App.) 200 S. W. 536. As the case was tried before the court, it then became a question of fact for the court, and he found against appellant's contention, and we think the record amply supports his finding.

We have carefully considered the cases cited by appellant to sustain its contention that limitation of four years had barred appellees' right, but we do not think any of them are in point under the facts of this case.

[4] By its sixth and seventh propositions appellant contends that appellees' cause of action for the value of 128,000 feet of timber, one of the items for which suit was brought, was barred both by the two-year and four-year statutes of limitation before same was first brought into this suit.

The original petition was filed January 23, 1917. The first amended original petition was filed November 3, 1920, neither of which included this item, but in their second amended original petition, filed June 22, 1922, appellees alleged:

"Plaintiffs further aver that in carrying out the agreement for the exchange of timber, the defendant went upon the plaintiffs' land and cut and removed the timber therefrom in advance of the scaling of the timber upon defendant's land which was to be delivered to the plaintiff, and as a result thereof the defendant cut and removed from the plaintiffs' land 128,000 feet of timber in excess of the quantity of timber owned by it and covered by the agreement for the exchange of timber, so that the defendant has failed to deliver to the plaintiffs that quantity of timber. That on or about the —— day of ——, 1921, plaintiffs demanded of the defendant that it procure and convey to the plaintiffs timber equal to the 128,000 feet, but this, plaintiffs are informed and believe, the defendant is unwilling and unable to do. Wherefore, plaintiffs are entitled to recover from the defendant the reasonable market value of the timber which it has been unable and unwilling to convey to plaintiffs, which fair and reasonable market value plaintiffs allege to be at the rate of $5 per thousand feet, amounting to a total sum of $640. That though often demanded of the defendant, it has failed and refused to pay this sum to these plaintiffs, to their great damage."

Appellant insists that, as the scale of timber under the contract of May 17, 1907, was completed about October 7, 1911, before which time the said 128,000 feet of timber had been cut, the conversion of the timber was some eleven years before any suit was brought therefor, and that, if it be contended that limitation did not commence to run until the last rescale was abandoned, about November 24, 1913, then that the cause of action for this item accrued nine years before the suit was brought thereon. Again, appellant insists that the court allowed recovery of this item on the theory that appellant,' by an instrument of date March 24, 1914, acknowledged that it owed appellees 128,000 feet of timber, which it agreed to convey to appellees at any time thereafter to suit their convenience, and that, in the negotiations between the parties looking to a settlement of all their different differences, the conveyance of this 128,000 feet of timber was

delayed and urges against that theory of the trial court that there are no allegations in appellees' pleading as to said instrument of March 24, 1914, and therefore that no recovery could be based thereon. Appellant further urges that, if there had been proper allegations in regard to the facts so found by the court, still their claim would have been barred by limitation, for if it was a demand payable or performable on demand, limitation began to run from the date of the promise or contract, the date of the instrument, March 24, 1914.

The 128,000 feet of timber was cut under and by virtue of the contract of May 17, 1907, supra, for the exchange of timber. The timber exchanged under said contract was to be of equal quantities, and, when it was ascertained that appellant had received more timber than it had transferred to appellees, provision for the payment or making good of the 128,000 feet was made in the instrument of March 24, 1914; that portion of the instrument stipulating for the payment of the timber reading:

"This deed is not intended to include the 128,000 feet of pine timber yet to be transferred by the party of the second part to the parties of the first part, which, after the close of scaling and balancing of account, was found to be yet due from the party of the second part to the parties of the first part, which will hereafter be done to the satisfaction of both parties."

### A. C. Bering testified:

"You say when these papers were prepared and I made that statement I owed 128,000 feet of timber to W. T. Carter & Bro.; well, we owed 128,000 feet of timber, but when this was paid back I do not remember. Now as to whether or not by any other deed or any other conveyance to Carter turned over any timber to him since that time, well, I thought the 128,-000 feet of timber was included in that. If it is not included in this, then I do not think that I have conveyed it, I have not paid them for it that I know of. Unless this deed conveyed to them, I still owe it to them. I know of no reason why I should not let them have it, if it is not paid. I think he ought to have it. If we owe 128,000 feet of timber we will pay it. I do not want to take advantage of the statute of limitation if I owe 128,000 feet. If I owe 128,000 feet, that is the way I understand it, I say I owe it, if it is not embraced in the Cone and the Ellis that was measured up down there for Carter. It was measured off on the Cone and Ellis. I just got that information since I have been here, after going over the scale books.

"This document that you now hand me is another document my attorney has offered in evidence, signed by Bering Manufacturing Company by A. C. Bering and dated the 24th day of March, 1914. This is my signature there. It has the seal of the Bering Manufacturing Company on it. This signed document by the Bering Manufacturing Company says: (At this point in the witness' testimony the entire instrument of date March 24, 1914, containing the paragraph, supra, relative to the conveyance of 128,000 feet of lumber was admitted and read to the jury.) This statement made over my signature was all true, I think (see quotation first above as to said 128,000 feet of timber contained in said instrument.)

### C. L. Carter testified:

"There were negotiations that were continued over a period of something like two or three years between me and Mr. Bering, covering all of the facts of that proposition, including the expense account, passing of deeds, and the scaling of this 128,000 feet of timber."

In the language of counsel for appellees—

"Appellant was acting, first, under the contract of May 17, 1907, and later the performance of this contract was extended under the terms of the instrument, dated March 24, 1914, at which time appellant acknowledged that the 128,000 feet of timber was due appellees, and agreed to convey this amount to appellees. So there had been no conversion of this 128,000 feet until appellant repudiated the contract to convey, which repudiation occurred in 1921, when appellees demanded performance of the contract and conveyance of the 128,000 feet of timber, for until that time appellant had asserted no claim inconsistent with the contract to convey, but at all times expressly recognized appellees' right to the 128,000 feet of timber."

The assignments are overruled.

[5] But appellant insists that said claim is barred by limitation, in that same was a claim payable on demand, and that as the contract for conveyance or promise of performance was dated March 24, 1914, it was due to be performed on that date, and the statute of limitation began to run at once, and more than four years had elapsed before the bringing of this item into the suit. We cannot agree with appellant that this was an obligation payable or performable on demand. We think the contract to convey was an executory one, to be performed when all matters pertaining to same had been arranged "to the satisfaction of both parties." The contract did not stipulate that it was to be done on demand. There were several matters to be finally adjusted between the parties, growing out of the contract for the exchange of timber. It seems certain that there was something to be done or ascertained before the contract to convey was to be performed, else why the expression, "which will hereafter be done to the satisfaction of both parties." Surely the timber to be conveyed to replace the 128,000 feet would have to be selected, measured, and surveyed, and doubtless its situation as to convenience to appellees and grade of timber, as compared with that received from appellees by appellant, and perhaps other matters relative thereto would all have to be taken into consideration and agreed to by the parties, in order that said conveyance would be "to the satisfaction of both par-

ties." As the contract or promise to convey the 128,000 feet of timber contemplated further negotiations and agreements between the parties as a condition precedent to the conveyance, until that condition was complied with or until one of the parties repudiated the contract, the statute of limitations did not begin to run. 17 R. C. L. § 121, p. 755; Abercrombie v. Shapira (Tex. Civ. App.) 94 S. W. 392; First National Bank v. Glass, 128 Ark. 578, 195 S. W. 15; Ewing v. Schultz (Tex. Civ.' App.) 220 S. W. 625; Cruse v. Eslinger (Mo. App.) 235 S. W. 496; Robertson v. Warren, 45 Tex. Civ. App. 584, 100 S. W. 805; National Oil Co. v. Taylor (Tex. Civ. App.) 45 S. W. 478.

What we have said disposes of appellant's tenth and eleventh propositions.

[6] By its eighth and ninth propositions, appellant contends that the agreement between appellant and appellees as to the rescale of the timber was that, if, when the rescale was completed, the difference between the old scale and the new scale amounted to as much as 1,000,000 feet or more, then appellees should pay the wages of the scaler furnished by them and one-half of the cost of surveying the land, but, if the difference was less than 1,000,000 feet between the new and the old scale, then the entire cost of the rescale and surveying should be paid by appellant, and that as the new scale was abandoned and never completed by the agreement of the parties, there could be no recovery by appellees against appellant for expenses incurred in making the new scale, and, further, that when the rescale was called off by the agreement of the parties, that it was understood and agreed that the parties should settle according to the old scale, and that everything else should be waived, and therefore the expense of the rescale was waived, and no recovery can be had therefor. To this contention appellees reply:

"(1) The fact that parties to a contract agree to abandon the contract does not itself show that they agree to release all rights of action which may have arisen up to the time of abandonment. (2) When it is claimed that by reason of inconsistency between the terms of the new agreement and those of the old one, the old agreement is discharged, the fact that such was the intention of the parties must clearly appear. (3) Contracts may be abandoned merely as to further performance, and still be operative for the purpose of fixing the liabilities of the parties accruing before abandonment."

Relative to the agreement to abandon the rescaling, the facts reflected by the record we think are succinctly and correctly set out in the court's sixth finding of fact, as follows:

"I find that on November 24, 1913, the rescale of said timber was called off and abandoned, and it was agreed by the parties to accept and make final settlement on the basis of the original scale of the timber which had been concluded about the first of the year 1911, as aforesaid. That in making the agreement to abandon said rescale and accept the old scale, Bering Manufacturing Company was represented by A. C. Bering, its president, and W. T. Carter & Bro. were represented by C. West, their timber man. That at the time said agreement was made the matter of paying the expenses of the rescale was not mentioned, and at that time C. West knew nothing about the agreement with reference to the payment of such expenses. In this connection I find that Bering's proposition to West upon which the rescale was discontinued was that he was willing to call off the rescale, settle according to the old scale, and everything else should be waived, but West did not know the terms of the agreement as to expenses, and did not and could not waive the same; that on the succeeding day after the agreement, the said C. West, having just learned of Bering's agreement to pay such expenses, called up A. C. Bering, and gave him notice that it was not intended to waive the prior contract of Bering Manufacturing Company to pay the costs of said rescale, and advised the said A. C. Bering that he could continue the said rescale if he desired; that on the 23d day of December, 1913, W. T. Carter, for W. T. Carter & Bro., advised Bering Manufacturing Company in writing that it would be held to its prior contract, and would be required to pay all the costs of said rescale. That the said Bering Manufacturing Company made no effort to have said rescale resumed, and did nothing towards completing said rescale. That there is no proof as to the difference between the new scale and the old scale of the Bering Manufacturing Company timber at the time the rescale was abandoned, and at the time same was abandoned Bering Manufacturing Company agreed to accept the original scale as being correct and as showing the correct amount of timber received and to be received by each of the parties."

We think the proposition should be overruled. The record shows that appellees were satisfied with the old scale, and that it was at the instance of appellant that the rescale was undertaken. When the agreement was made to abandon the rescale, West, the representative of appellees, knew nothing of the agreement between the parties that, if the rescale showed a difference of less than 1,000,-000 feet between the old scale and the new, appellant was to pay the entire cost of rescaling; in fact, he had no knowledge of any agreement relative to paying the cost, and when the agreement was made between West, for appellees, and Bering, nothing was said about paying the cost. When West was informed as to this agreement, he immediately called up Bering and explained the matter to him, and told him that if he, Bering, was not willing to pay the cost, that appellees were willing to put the man back to work to complete the rescale, but appellant neither put his men back to work to complete the rescale, nor indicated his wishes in the matter, and they were never put back, and no further rescaling was done.

**[7, 8]** It is well settled that parties to a contract may agree to cancel it, and, if there be nothing to indicate a different intention, each party will be fully discharged from all liability under such contract, but, in doing so, the use of the word, "rescind," "cancel." or "abandon" will not necessarily have that effect. The liability in such case must be referred to the terms of the agreement to cancel, and, in order to interpret that agreement, the intention of the parties, the character of the contract to be canceled, and the situation of the parties at the time, as well as all the attending facts and circumstances, which throw light upon the question of intent, must be looked to, and, if it appear from these facts and circumstances that it was not the intention of the parties that the act of cancellation should have a retroactive effect to destroy previously vested rights, then the contract will be so construed as to preserve those rights. Alabama Oil & Pipe Line Co. v. Sun Co., 99 Tex. 606, 92 S. W. 253; Collinsville Mfg. Co. v. Street (Tex. Civ. App.) 196 S. W. 284; Hayes v. City of Nashville, 80 Fed. 641, 26 C. C. A. 59, 13 C. J. 603. A waiver exists only where one with full knowledge of a material fact does or forbears to do something inconsistent with the existence of the right or of his intention to reply upon that right. Knowledge of the existence of the right on the part of the party claimed to have made the waiver is an essential prerequisite to its relinquishment. No one can be said to have waived that which he does not know, or where he. has acted under a misapprehension of the facts. 40 Cyc. 259, 260; 27 R. C. L. 908, 909.

Appellant's nineteenth proposition asserts that the court erred in rendering judgment for any amount in excess of $2,000 on the rescaling and resurveying expenses, because the appellees, in their pleading, allege their damages on said account to be in the sum of $2,000.

The court gave judgment for $3,063.95. Of this amount $640 was for the value of the 128,000 feet of timber in issue, and the remainder, $2,423.95, was for the expenses of rescaling and resurveying, $1,608.82, with interest thereon at the rate of 6 per cent. from January 1, 1914, to the date of the judgment. The cost of rescaling and resurveying was alleged by appellees to be $1,608.82, and the petition alleged the damages suffered by appellees, by reason of appellants not paying same, was $2,000. The eighth paragraph of appellees' second amended petition, upon which the case was tried, alleged:

"That plaintiffs have demand upon defendant for the payment of said sum of $1,608.82, but defendant has refused and failed to pay the same or any part thereof; that by reason of the facts herein alleged the defendant became bound and obligated to pay to plaintiffs the said sum of $1,608.82, together with interest there-

on from the 1st day of January, 1914, at the rate of 6 per cent. per annum; that, although the plaintiffs have frequently demanded payment to them of said sum, defendants have wholly refused and failed to pay the same or any part thereof, to the great damage of these plaintiffs in, to wit, the sum of $2,000."

The prayer was:

"Premises considered, plaintiffs pray, defendant having heretofore answered herein, that they have judgment for the amount due them as hereinabove alleged, for expenses incurred and amounts paid out by them in said rescale of said timber as covered by the contract hereinabove alleged, for costs and for all such other and further relief, both legal and equitable, as they are entitled to in the premises, and thus they will ever pray."

Appellant insists that, as appellees specifically allege their damages suffered by reason of the failure of appellant to comply with the agreement regarding the rescaling to be $2,000, that appellees can, in no event, have judgment for more than that amount, and that, as the court gave judgment for $2,423.95, the judgment is excessive to the amount of $423.95. Appellees say that the court did not err in granting judgment for the interest in full, because the interest is not a part of the damages sued for, but is a consequence of the debt as a matter of law.

**[9]** Interest eo nomine cannot be allowed, unless expressly provided by statute, but in many instances it may be assessed as damages, when necessary to indemnify a party for an injury inflicted by an adversary, though the statute be silent upon the subject. For interest, therefore, to be a legal incident of the debt, it must be authorized by statute. Heidenheimer v. Ellis, 67 Tex. 428, 3 S. W. 666; McDaniel v. Laundry Co. (Tex. Com. App.) 244 S. W. 135; Vernon's Sayles' Civil Statutes, title 72, arts. 4973 to 4981, define interest, legal and conventional, and then provide for interest in three different articles, to wit:

Article 4977: "On all written contracts ascertaining the sum payable, when no specified rate of interest is agreed upon by the parties to the contract, interest shall be allowed at the rate of six per cent. per annum from and after the time when the sum is due and payable.

Article 4978: "On all open accounts, when no specified rate of interest is agreed upon by the parties, interest shall be allowed at the rate of six per cent. per annum from the first day of January, after the same are made.

Article 4981: "All judgments of the several courts of this state shall bear interest at the rate of six per cent. per annum from and after the date of the judgment, except where the contract upon which the judgment is founded bears a specified interest greater than six per cent. per annum and not exceeding ten per cent. per annum, in which case the judgment shall bear the same rate of interest specified in such contract and after the date of such judgment."

[10, 11] If appellees' claim for interest eo nomine is authorized by either of the above statutes, it must be under article 4977, and we do not believe it meets the test of that article. It is not founded upon a written contract ascertaining the sum payable, for resort to the contract under which the expenses of rescaling and resurveying were incurred would not divulge any stipulated or ascertained amount to be so expended, but other evidence would be necessary to ascertain same. So the claim does not fall under that statute, and the interest claimed would not be interest eo nomine, and hence not an incident of the debt, but interest allowed as damages or punishment for delay in complying with the contract. Baker v. Smelser, 88 Tex. 28, 29 S. W. 377, 33 L. R. A. 163; West Lbr. Co. v. Henderson (Tex. Com. App.) 252 S. W. 1044; Nueces Hotel Co. v. Ring (Tex. Civ. App.) 217 S. W. 255. That being true, no greater sum could be given in judgment than was pleaded by appellees, $2,000, and hence the court erred in giving judgment in excess of that amount. In a suit, when interest is claimed as damages, the pleadings must be laid in sufficient amount to cover both the loss or damages and interest. The recovery in such case cannot exceed the amount claimed as damages. Railway v. Addison, 96 Tex. 61, 70 S. W. 200; Railway v. Allen (Tex. Civ. App.) 189 S. W. 765.

Appellant presents numerous other propositions, but, after carefully considering same, we do not believe that any of them show reversible error, and they are all overruled.

[12] The error above noted in the matter of excessive judgment does not require that the case be reversed and remanded, but, as the amount erroneously adjudged is definite and ascertained, $423.95, the judgment of the court below will here be reformed by striking therefrom said amount, $423.95, and, as reformed, is affirmed.

Reformed and affirmed.